16 223
66 462
16 223
73 103

## CASTLE *against* CANDEE.

In the case of a blank indorsement of a promissory note, whether negotiable or not, whether indorsed by the payee or a third person, the law declares the contract ; and generally, the blank need not be filled up, before or on the trial. But where the object of the plaintiff, in a suit against the indorser, is to abandon the contract implied by law, and to fix a liability, by the proof of a special contract, different from that implied by law, it is the duty of the plaintiff, if required, to fill up the indorsement, before trial, with the contract upon which he intends to rely.

The *prima facie* import of a blank indorsement of a note not negotiable, payable on time, is an engagement, by the indorser, that the note is due and pay-

*Litchfield,*
June, 1844.

Castle
*v.*
Candee.

able according to its tenor; that the maker shall be of ability to pay it, when due; and that it is collectable, by the use of due diligence.

The same general doctrine is applicable to the indorsement of a note payable on demand; though the conduct requisite to constitute due diligence, in the two cases, may be different.

Though the law requires the use of due diligence, in the holder of a note payable on demand, in order to subject the indorser; yet it does not prescribe any certain rule of conduct for this purpose, but leaves the question of due diligence to depend upon the circumstances of the case.

In the absence of any contract of forbearance for a definite time, the indorser may, at any time, require of the holder immediate action, by attachment; and should the holder then neglect to pursue the legal remedy, it would discharge the indorser's liability.

Where the indorsee of a note not negotiable, payable on demand, with interest, alleged, in a suit against the indorser, that the plaintiff, at the request of the defendant, loaned a sum of money to the maker of such note, to enable him to prosecute such business, for which such note was given; and that the defendant, in consideration thereof, by his indorsement on such note, promised the plaintiff, that it should be good and collectable, by the use of due diligence, for a reasonable time; it was held, 1. that such note, with the blank indorsement of the defendant thereon, was admissible in evidence, under such declaration; 2. that parol proof of the consideration, and that the parties contemplated forbearance, was also admissible; 3. that certain mortgage deeds, executed by the maker of the note, to the defendant, shortly after the indorsement, from the terms of which it might be fairly inferred, that the defendant understood the contract as authorizing forbearance, and that he recognized his continuing liability, when he received them as security, were also admissible.

THIS was an action of *assumpsit.* The declaration contained five counts.

In the first, it was stated, That on the 6th of *January,* 1840, the plaintiff, at the special instance and request of the defendant, lent and advanced to *Charles Bishop,* the sum of 500 dollars, and therefor took of him his promissory note, bearing date on said 6th of *January,* 1840, in and by which, he, said *Bishop,* promised the plaintiff to pay to him the sum of 500 dollars, with interest, for value received, on demand; that in consideration of the premises, the defendant did, by his indorsement on the back of said note, warrant to the plaintiff the payment of said note, and promise the plaintiff, that said *Bishop* should pay to the plaintiff said sum of money in said note specified, according to the tenor thereof; that said *Bishop* has, at all times, wholly neglected and refused to pay said note, though often requested and demanded, especially at *Woodbury,* on the 8th of *October,* 1840, when and where he, said *Bishop,* by the consent, and with the knowledge and pro-

curement, of the defendant, became, and has hitherto remained, wholly insolvent and destitute of property ; and said note is now, and ever since has been, wholly uncollectable from said *Bishop*, by the use of any means or dilgence whatsoever, and the same still remains due and unpaid ; of all which the defendant, afterwards, to wit, at said *Woodbury*, on said 8th of *October*, had notice.

*Litchfield,*
June, 1844.

Castle
*v.*
Candee.

The second count, after stating the advance of the money, by the plaintiff, and the giving of the note, by *Bishop*, averred, that in consideration of the premises, the defendant did, then and there, by his indorsement on said note, assume, promise and guaranty to the plaintiff, that said *Bishop* should pay said note, on demand ; and that afterward, at said *Woodbury*, on the 8th of *October*, 1840, the plaintiff requested said *Bishop* to pay said note, which he, then and there, wholly neglected and refused to do, and the same remains wholly due and unpaid.

The third count alleged, that the defendant did, by his indorsement on said note, undertake and faithfully promise the plaintiff, that said note should, at all times, be good and collectable of said *Bishop*, by the use of due diligence, until and when the defendant should request the plaintiff to collect the same ; and that the defendant has not, at any time since the execution of said note, requested the plaintiff to collect said note, nor given him any notice that he would be no longer holden thereon ; and on the 8th of *October*, 1840, the plaintiff requested said *Bishop* to pay said note ; but he wholly refused so to do ; and said note now remains wholly due and unpaid.

The fourth count stated, that the plaintiff advanced the money to said *Bishop*, for his accommodation, and to enable him to meet his engagements, and to carry on the business in which he was engaged, *viz.* the manufacture of satinets, with the understanding had by and between the plaintiff and defendant, that he, the plaintiff, should forbear and give to said *Bishop* day for the payment of said sum of money, at the pleasure of either the plaintiff or the defendant ; and the plaintiff took of said *Bishop* his promissory note for said sum of 500 dollars, bearing date on said 6th of *January*, 1840, in and by which said *Bishop* promised the plaintiff to pay to him, for value received, the sum of 500 dollars, with interest,

on demand ; that, in consideration of the premises, the defendant did, then and there, by his indorsement on said note, undertake and faithfully promise the plaintiff, that said note should, at all times, be good and collectable of said *Bishop,* by the use of due diligence, until and when the defendant should give notice to the plaintiff, that he would not, by virtue of said indorsement, be holden for the collectibility of said note thereafter ; and that the defendant has not, at any time since the execution of said note, given to the plaintiff the notice aforesaid ; nor has he, at any time, requested the plaintiff to proceed to the collection of said note of said *Bishop,* to the end that he, the defendant, might be exonerated from his said indorsement ; and said note now remains wholly due and unpaid.

The fifth count stated, that at *Woodbury,* on the 6th of *January,* 1840, said *Charles Bishop* was engaged in the business of manufacturing satinets, and it was necessary for him to borrow money, to enable him to meet his engagements, and to prosecute his said business, of which the defendant had notice ; that at the special instance and request of said *Bishop* and the defendant, the plaintiff lent and advanced to said *Bishop* the sum of 500 dollars, for the purpose aforesaid, and, at the like special instance and request, the plaintiff took of said *Bishop* his promissory note, dated said 6th day of *January,* for said sum of money, in and by which note said *Bishop* promised the plaintiff to pay to him, for value received, the sum of 500 dollars, with interest, on demand ; that in consideration of the premises, the defendant did, then and there, by his indorsement on the back of said note, undertake and faithfully promise the plaintiff, that said note should be good and collectable, by the use of due diligence, for a reasonable time thereafter ; that the defendant did not, at any time after the execution of said note, require the plaintiff to collect said note of said *Bishop,* nor give notice to the plaintiff that he was no longer willing to be holden, by virtue of said indorsement, for the collectibility of said note ; that the plaintiff, by the consent of the defendant, did forbear and give day to said *Bishop,* for the payment of said note, until the 8th day of *October,* 1840, when said *Bishop,* by the procurement of the defendant, became insolvent, and wholly destitute of property ; and said note is not now, nor has the same since, been collect-

able of said *Bishop,* by the use of due diligence, and the same now remains wholly due and unpaid ; of all which the defendant, at said *Woodbury,* on said 8th of *October,* 1840, had full knowledge and notice.

The cause was tried at *Litchfield, February* term, 1844, before *Waite,* J.

The plaintiff produced in evidence the note described in the declaration, of which the following is a copy : " *Wood-bury, January* 6th, 1840. For value received, I promise to pay *Chauncey N. Castle,* the sum of five hundred dollars, on demand, with interest. *Charles Bishop.*" On this note, the name of *Lewis B. Candee,* the defendant, was indorsed in blank. The signatures of the maker and indorser were admitted to be genuine. But the defendant objected to the admission of the note and indorsement, by themselves, or in connexion with any parol evidence, to prove the counts in the declaration, until the blank indorsement was in fact filled up with what the plaintiff claimed the true contract between the parties was, at the time the indorsement was made, if he claimed such contract to be different from that which the law would imply from a blank indorsement. The court overruled the objection, and admitted the evidence.

The plaintiff also read in evidence the deposition of *Bishop,* in which he testified, That on the 6th of *January,* 1840, he was either engaged in making satinets, or about going into that business ; that the plaintiff, having previously advanced 200 or 300 dollars, on his own note, the plaintiff then offered to make it up 500 dollars ; that for this the witness gave the plaintiff a note, signed by him, for 500 dollars, payable on demand, this being the only note for that amount which he ever gave the plaintiff ; that either at the time this note was given, or afterwards, the plaintiff required some security on it, and the witness procured the defendant to indorse it ; that when he applied to the defendant to indorse it, the defendant made considerable objection to indorsing it, remarking, (as the witness thought, but was not certain,) that he might be called upon immediately to pay it, to which the witness replied, (as he thought,) that the defendant need not be alarmed, as the witness would be ready to pay the note, whenever the money was wanted ; that after the note was indorsed by the defendant, the witness took it to the plaintiff ; that the plaintiff ap-

peared then to be satisfied, but after some time had elapsed, say a month or two, the plaintiff expressed to the witness dissatisfaction, and wanted him to get the defendant to warrant the note ; that the witness took the note to the defendant, and asked him to guaranty it, but he said, he would not put his name on it in any other way than it then was.

The plaintiff then, in support of the several counts of the declaration, offered in evidence two mortgage deeds, executed by said *Bishop*, to the defendant, one dated *October* 8th, 1840, and the other, *October* 9th, 1840. The condition of the former recited, that said *Candee*, in the year 1838 or 1839, indorsed his (*Bishop's*) note to *C. N. Castle*, for 500 dollars and interest, and indorsed or secured, at other times, certain other notes to other persons, for *Bishop's* benefit. The condition of the other deed recited, that *Bishop* was under all the responsibilities named in his mortgage deed to *Candee*, of the 8th of that month, referring to such deed for a description of said responsibilities. The object of both deeds, as expressed in the conditions respectively, was, to indemnify *Candee*, for such responsibilities. From the evidence respecting these deeds, it appeared, that the former one was executed by *Bishop*, without the knowledge of the defendant, and deposited with the town-clerk ; and that the defendant, being, on the next morning, informed of the execution of the deed, took it and carried it to *Bishop*, and procured him to execute the other deed.

The defendant objected to the admission of these deeds, on the ground that they did not conduce to prove any one count in the declaration. But the court overruled the objection, and admitted the evidence.

It was admitted, by the defendant, that at the time of the execution of said deeds, and before the commencement of this suit, *Bishop* had become, and ever since has continued to be, utterly insolvent.

This was all the evidence in the cause, except that it appeared from the note, that the body of it, and the signature to it in the handwriting of *Bishop*, were written with blue ink, and that the date and indorsement were written with black ink. From these circumstances, the plaintiff claimed to the jury, that the note must have been made by *Bishop*, and in-

dorsed by the defendant, before it was ever delivered to the plaintiff.

The defendant prayed the court to charge the jury, that upon the evidence before them, they should return a verdict for the defendant, because, so far from proving any one of contracts set up in the declaration, it proved one entirely different.

The court did not so charge the jury, but instructed them, that if they should find from the evidence before them, that the plaintiff had proved any one count in the declaration, he was entitled to recover on that count ; but if he had failed so to do, they must return a verdict for the defendant. The court further instructed the jury, that if they should find from the evidence before them, that the note in question was made by *Bishop*, and indorsed by the defendant, to enable *Bishop* to obtain a loan of money from the plaintiff, to carry on his business as a manufacturer, as stated in his deposition, and that the plaintiff did in fact make such loan, relying upon such note and indorsement, and they should find nothing more in the case, they were authorized to find a verdict in favour of the plaintiff, upon the first count in the declaration.

The jury returned a verdict in these words: " In this case, the jury find, that the defendant did assume and promise, in manner and form as the plaintiff in his declaration has alleged, and therefore find for the plaintiff, to recover of the defendant, the sum of 619 dollars, 44 cents, damages, and his costs of suit." The defendant thereupon moved for a new trial, it being stated, in the motion, that the verdict so given was upon the first count.

*Church*, in support of the motion, contended, 1. That the evidence offered by the plaintiff in support of his declaration, was inadmissible.

In the first place, the note and indorsement, in the condition in which they were, when offered, did not support any count in the declaration. The indorsement *expressed* no contract whatever, being merely a man's name ; and it *implied* none, except what the law implied. What then is the contract, which the law implies from a blank indorsement of a note not negotiable ? It is not an *absolute* engagement that the maker shall pay the note according to its tenor, but a

*conditional* one, *viz.* that the maker shall be able to pay the note, and shall in fact pay it, on condition that the indorsee uses due diligence to collect it. *Perkins* v. *Catlin,* 11 *Conn. R.* 213. Now, in no one of his five counts has the plaintiff declared on such a contract. The first count states, that the defendant warranted the payment of the note, and promised the plaintiff, that *Bishop* should pay the sum of money therein specified, according to the tenor thereof. Nothing is said about the conditional part of the contract; nor is it alleged, or even intimated, that it has any condition. Nor if the contract had been correctly stated, is it averred, that the plaintiff has performed it, on his part. He merely says, that the note was uncollectable, by the use of any means whatsoever—*i. e.* it would have availed nothing, if he had performed. The second count states a contract equally absolute, *viz.* that the defendant promised and guarantied, that *Bishop* should pay the note, on demand; and that the plaintiff had made demand. The third count comes a little nearer the contract implied by law, but still keeps clear of it. The promise alleged is, that the note should, at all times, be good and collectible of *Bishop,* by the use of due diligence, *until and when the defendant should request the plaintiff to collect the same.* Here, instead of the simple condition implied by law, a qualification of the promise widely different from that condition, and essentially varying the contract, is substituted. The fourth count has a little different phase of the same infirmity. The qualification of the defendant's promise here is—*until and when the defendant should give notice to the plaintiff, that he would not, by virtue of said indorsement, be holden for the collectibility of said note thereafter.* The fifth count states the promise to be, that said note should be good and collectable, by the use of due diligence, *for a reasonable time thereafter.* This count, though the least exceptionable perhaps of any, does not describe, with the requisite certainty, the contract implied by the indorsement. Besides, it appears from the motion, that the verdict was not given on this count, but on the first alone.

Secondly, the mortgage deeds given in evidence, were inadmissible, because they count on a note indorsed in 1838 or 1839, whereas the note in suit, as described in all the counts,

was not given until 1840; and because they were otherwise irrelevant.

Litchfield,
June, 1844.

Castle
v.
Candee.

Thirdly, the parol evidence introduced, was inadmissible. It is obnoxious to all the objections that lie against the note and indorsement, and to the further one. that it is in contravention of the statute of frauds and perjuries. The promise stated in every count, is a "promise to answer for the debt, default or miscarriage of another."

Fourthly, whatever may be the legal import of a blank indorsement—*i. e.* in whatever manner the law may require the blank to be filled, when the instrument is offered in evidence—until it is filled, it is inadmissible to prove a contract to answer for the debt of another; for until that is done, there is no "note in writing" within the statute of frauds. *Jackson* d. *Lloyd* v. *Titus*, 2 *Johns. R.* 430. *Bailey & Bogert* v. *Ogden*, 4 *Johns. R.* 394. Besides, as a matter of practice, the plaintiff ought to show, by filling the blank, what he claims the contract to be, and what the defendant is called upon to meet. The defendant may well demand of him to *show his hand*.

2. That the court erred in the charge to the jury. The charge says, that if the note was made by *Bishop*, and indorsed by the defendant, to enable *Bishop* to obtain money of the plaintiff to carry on his business as a manufacturer, as stated in his deposition, and the plaintiff did in fact make such loan, relying on such note and indorsement, and the jury should find nothing more, they were authorized to return a verdict for the plaintiff, on the first count. Is this the consideration stated in the first count? If not, then the attention of the jury was called to a different consideration from the one stated in this count. If such is the consideration stated in the first count, then the court, in thus instructing the jury, erred; for no such consideration is stated in *Bishop's* deposition. The consideration there stated, is the security for an existing debt of between 200 and 300 dollars, and a further loan; but for what purpose this further loan was made, is not distinctly stated. But as the plaintiff had become dissatisfied with the personal security of *Bishop*, for the then existing debt, and as the offer of a further loan came from the plaintiff, it is fairly inferable, that the consideration of the promise was, that if the plaintiff would give *Bishop* further time to pay the existing debt, and also loan him a further sum of money, the de-

*Litchfield,*
*June, 1844.*

Castle
*v.*
Candee.

fendant would guaranty the payment of the whole. The defendant received nothing for assuming the liability. The only inconvenience resulting to the plaintiff from the transaction, was, extending time on the old debt, and advancing the additional money. This was a transaction between the plaintiff and *Bishop,* of which the defendant knew nothing, and with which he had nothing to do. There was, therefore, no other consideration passing between the plaintiff and defendant, than what the law implies, *viz.* the exercise of due diligence on the part of the plaintiff. This consideration is not stated in the first count; nor is it the one to which the attention of the jury was called, by the court.

*T. Smith* and *Hollister*, contra, contended, 1. That though a blank indorsement on a promissory note, imports, that it is due and collectable, by the use of due diligence, yet this is merely the *prima facie* import of such indorsement, and it is competent to the holder to prove the agreement which was in fact made between the parties. He may prove, that the indorser guarantied the absolute payment of the note, and recover accordingly. *Perkins* v. *Catlin,* 11 *Conn. R.* 213. *Beckwith* v. *Angell,* 6 *Conn. R.* 315.

2. That in this case, the money was borrowed *on time :* it was a loan for the accommodation of *Bishop.* Forbearance was contemplated, by all concerned ; and instant suit by *Castle,* would have been a breach of faith. This appears, in the first place, from the terms in which the note is conceived. *Stedman* v. *Jillson,* 10 *Conn. R.* 55. 58. *Smith* v. *Allen,* 5 *Day,* 337. *Barrough* v. *White,* 4 *B. & Cres.* 225. (10 *E. C. L.* 345.) *Heywood* v. *Watson,* 4 *Bing.* 496. (15 *E. C. L.* 55.) *Pease* v. *Hirst,* 10 *B. & Cres.* 122. (21 *E. C. L.* 39.) Secondly, this is fully proved, by the deposition of *Bishop ;* or rather, it is inferable from the facts stated by him. *Cushing* v. *Gore,* 15 *Mass. R.* 69. *Heywood* v. *Watson,* and *Pease* v. *Hirst, ub. sup.* The court was therefore justified in saying to the jury, that on the facts stated by *Bishop,* they were authorized to find the first count in favour of the plaintiff.

3. That the facts having been ascertained by the jury, if the court can see that those facts will support *any* count in

the declaration, the court will deem the verdict referable to that count.

*Litchfield,*
*June, 1844.*

*Castle*
*v.*
*Candee.*

4. That the mortgage deeds executed by *Bishop* to the defendant, were clearly admissible.

5. That the note and indorsement in blank, were properly admitted : for, in the first place, it is not the *practice* to fill up blank indorsements. *Perkins* v. *Catlin*, 11 *Conn. R.* 213. Secondly, to fill up the indorsement would be *nugatory*. The case must, after all, turn on the proof. *Bradley* v. *Phelps*, 2 *Root*, 325. S. C. *Sw. Ev.* 342. 1 *Sw. Dig.* 434. Thirdly, a rule requiring the indorsement to be filled up, would involve a plaintiff in great difficulty : it would, in effect, tie him up to one count.

6. That it is apparent from the record that entire justice has been done ; and therefore, a new trial will not be granted. *Johnson* v. *Blackman*, 11 *Conn. R.* 342. *Lester* v. *The State, Id.* 415. *Potter* v. *Tyler*, 2 *Metc.* 58. 64, 5.

CHURCH, J. The declaration, in this case, contains five counts, and all of them upon the guaranty or blank indorsement made by the defendant, of the note of *Charles Bishop*, payable to the plaintiff, *on demand, with interest.*

There is some obscurity in the case, arising from the statements of the motion for a new trial, when compared with the verdict of the jury. The charge of the judge, though it submitted to the jury the whole declaration, seems to have looked to the first count, as the only one upon which the plaintiff could sustain himself. And the motion also states, that the jury returned a verdict for the plaintiff upon the first count ; yet the verdict is a general one, in favour of the plaintiff, upon all the counts. This being so, we must consider the verdict as having fixed the liability of the defendant, if the evidence offered by the plaintiff was admissible, under any one of the counts.

It seems, that in the first stage of the inquiry, the defendant objected to the admission of all the evidence of the plaintiff, which might conduce to prove a special contract different from the one which the law *prima facie* implies from the unexplained blank indorsement, until the indorsement should be filled up, if the plaintiff intended to rely upon the indorsement at all. The opinion which we have formed, and shall ex-

press, as to the admissibility of the note and other evidence, under the fifth count, may render an opinion upon this objection of no avail; but as the question has been much discussed, and has been considered, and is of much practical importance, we shall not avoid the decision of it.

It is true, that blank indorsements of negotiable paper, need not be filled up, on or before the trial, in ordinary cases; because the name of the indorser in blank, imports a definite contract, known to the parties and every body else—a contract and liability of equal certainty and precision, as if drawn out in written language. And the same is true, by our practice, of a blank indorsement of a note not negotiable, or of a negotiable note indorsed by a stranger to it. In all these cases, the law declares the contract; and the name in blank informs us by whom it was made. But the state of things is very different, where the object of the plaintiff is to abandon the contract implied by law, and to fix a liability, by the proof of a special contract, which the law has not presumed from the indorsement of the defendant's name. In such cases, the purpose of the party, is, to deny the legal presumption, or to prove a contract entirely independent of it. Here it is certain, that to admit parol proof of such a special contract, without filling out the indorsement, would be to take the defendant by surprise and unprepared, and compel him, without notice, to make defence to a case different from the one he had a right to expect. We think, upon the principles of fair trial, that it is the duty of the plaintiff, in such case, if required, to fill up the indorsement, before trial, with the agreement upon which he intends to rely in his proof.

Another objection to the parol evidence offered, was, that it was inadmissible because opposed to the provisions of the statute of frauds and perjuries. So far as such evidence came in aid or in corroboration of the legal intendment arising from the blank indorsement, or conduced to prove the consideration of the promise alleged, it was not objectionable. Nor can we say, since the cases of *Beckwith* v. *Angel,* 6 *Conn. R.* 315. and *Perkins* v. *Catlin,* 11 *Conn. R.* 227. that parol proof of a special contract different from the one implied, is inconsistent with that statute; although it has been strongly intimated, that to prove, in such case, by parol, a mere collateral suretyship, cannot be permitted. *Leonard* v.

*Vreedenburgh,* 8 *Johns. R.* 29. *Herick* v. *Carman,* 12 *Id.* 160. *Nelson* v. *Dubois,* 13 *Id.* 175. *Campbell* v. *Butler,* 14 *Id.* 349. But see *Johnson* v. *Gilbert,* 4 *Hill,* 178.

*Litchfield, June, 1844.*

Castle
v.
Candee.

Upon the best consideration we have been able to give to this case, embarrassed as it is with many counts, and at the bar, with still more numerous questions, a majority of us believe, that the note and indorsement, and the other evidence in the case, were admissible under the fifth count in the declaration.

Since the case of *Perkins* v. *Catlin,* it will be unnecessary for us to review the peculiar law of this state regarding guaranties and blank indorsements. If, before that case, there had been any uncertainty, or various professional practice in regard to the nature of the contract implied by such indorsement, and the degree of diligence imposed upon the holder of notes thus indorsed; the careful consideration which this subject then received, and the elaborate discussion it underwent, should satisfy us, that nothing will be gained, by again throwing it open to doubt. We hold now, as then, that the *prima facie* import of a blank indorsement of a note not negotiable, is an engagement by the indorser, that the note is due and payable according to its tenor; that the maker shall be of ability to pay it, when due; and that it is collectable, by the use of due diligence: and although this doctrine, in most, if not in all, the former cases, has been applied to notes payable on time; yet in our judgment, it is as well applicable to notes like the present, payable on demand. The distinction between this case and the others, is not in the legal import of the indorsement, but in the duty of the holder of the paper. We have holden, in cases where the note was payable at a future time, that reasonable diligence required of the holder to pursue his remedy against the indorser, as soon as the note fell due, because, as by the terms of the note, the precise time of payment was fixed, it must be presumed, that the guaranty was given and received in reference to that time alone; and therefore, to postpone the legal measures for collection beyond that time, would be a violation of the understanding of the parties. And the law, in a case like this, holds the party to the use of due diligence in enforcing collection; and what will amount to the use of such diligence, in this case, as in the other cases, will depend, to some extent, upon the presumed

intention of the parties. In ordinary cases of the guaranty of notes payable on demand, and especially, if indorsed by a stranger, forbearance is one object, if not the chief object, of the indorser. In the present case, in addition to this, the note here bears interest, showing certainly, that the parties all around, had further forbearance in view, and did not intend that the note should be sued instantly. In the exercise of reasonable diligence, therefore, this plaintiff was not obliged to sue immediately, as that course would have opposed the common understanding of all the parties interested. *Vreeland* v. *Hyde*, 2 *Hall*, 429. We cannot prescribe, if the case called for it, any certain rule of conduct, which the indorsee of such a note as this must pursue, in order to subject the indorser. He must observe due diligence; and what this is, as in other cases where the question of reasonable diligence arises, must depend upon the peculiarities of each case. And the indorser, by this doctrine, cannot be subjected to unreasonable hazard; because he, at all times, has the power in his own hands to require immediate action by attachment, for his own safety, if there was no contract to forbear for a definite time; and should the holder of the note then neglect to pursue the legal remedy, it would be a delay and negligence so culpable as to discharge the guaranty.

The fifth count in this declaration alleges the contract to be, that the defendant, by his indorsement on the back of said note, undertook and faithfully promised the plaintiff, that the note should be good and collectable, by the use of due diligence, for a reasonable time. If this note had been made payable at some future day, as in the common cases, there could be no doubt but it would, with the indorsement, have been admissible in evidence to prove that promise, under this count. But, as we have said, the law implies the same contract in the case of a note payable on demand; and therefore, it follows, that this note and indorsement were admissible, under this count.

Under the same count, the deposition of *Bishop* was admissible. The object of it was not to establish a contract at variance with the contract set up in this count. It proved, that the parties contemplated forbearance; and that the defendant positively refused to make any other contract, than, by his name in blank, he had already made. This deposition

also conduced to prove the same consideration as is alleged in the fifth count.

The mortgage deeds furnished very little evidence in the case ; and if they proved nothing, we should not, for that reason, grant a new trial. It might have been fairly inferred from these deeds, that the defendant understood the contract as authorizing forbearance, and that he recognized his continuing liability, when he received them as security.

We do not advise a new trial.

In this opinion WILLIAMS, Ch. J., and STORRS and HINMAN, Js., concurred.

WAITE, J. The note in question is payable on demand, with interest, and is indorsed in blank, by the defendant, who is no party upon the face of the instrument. It was made and indorsed, as the plaintiff claims, for the purpose of enabling the maker to procure a loan of money from the plaintiff.

The question now is, what contract the defendant made, by his indorsement, under such circumstances. No decision has been cited relating to a case precisely like the present. We must, therefore, resort to decisions in other cases of a like character, for principles applicable to this case.

Had the note, instead of being payable on demand, been a negotiable note, and made payable on the expiration of a given time, the indorsement would be differently construed, by different courts.

Thus, the courts in *Massachusetts* say, the defendant, in such case, would not become a mere indorser, but an original promiser, liable to be sued as such, alone, or jointly with the maker. *Austin* v. *Boyd,* 24 *Pick.* 66. *Baker* v. *Briggs,* 8 *Pick.* 130. *Oxford Bank* v. *Haynes, Id.* 427.

The courts in *New-York* say, the legal effect of such an indorsement, is, that the indorser agrees that he will pay the note to the holder, on receiving due notice that the maker, on demand made, at the proper time, has neglected to pay it ; and that he cannot be sued as an original promiser or guarantor. *Seabury* v. *Hungerford,* 2 *Hill,* 82. *Hall* v. *Newcomb,* 3 *Hill,* 234. *Prosser* v. *Luqueer,* 4 *Hill,* 420.

In *Connecticut,* our courts have said, that such indorsement *prima facie* implies a contract on the part of the in-

dorser, that the note is due and payable according to its tenor, that the maker shall be of sufficient ability to pay it, when it comes to maturity, and that it is collectable, by the use of due diligence ; and that a different contract may be proved to have been made, by parol evidence. *Perkins* v. *Catlin* 11 *Conn. R.* 213. *Lafflin* v. *Pomeroy, Id.* 440.

It is greatly to be regretted, that a contract of this mercantile character, upon an instrument designed upon its face to circulate in the community, should receive so many different constructions : that its meaning should depend upon whether it was made on this or that side of a state line : that it should be necessary for a person, before he could know what contract is contained in the indorsement, to inquire whether it was made in *Massachusetts, New-York,* or *Connecticut ;* and if in the latter state, whether there are any witnesses, by which a contract may be proved different from what the law would otherwise imply.

And perhaps it would have been better, had our courts held, that such indorsements, like those made by the payee of a note, have a fixed legal character, not depending for their meaning, upon the vague and uncertain recollection of witnesses, and circumstances, often imperfectly presented on the trial ; that every person, upon looking at such an indorsement, might say, at once, what contract it contained.

The correctness of the rule admitting parol evidence to explain the meaning, has been questioned, by eminent judges ; and the rule itself, if not against the letter of the statute of frauds and perjuries, is certainly opposed to its spirit.

It is perhaps doubtful, whether such a contract would be enforced at all, by the *English* courts. They hold, that the consideration of a contract to answer for the debt of another, as well as the contract itself, must be in writing, or it will fall within the statute.

But what is the contract contained in this indorsement? Now, the construction uniformly given, by our courts, to all blank indorsements whatever, upon promissory notes, by a person not a party upon the face of the instrument, in the absence of all evidence but the indorsement itself, is, that the indorser agrees that the amount is collectable of the maker, when the note becomes due. I know of no exception to this rule.

Apply it to the present case. The defendant agreed, that

the note was collectable of the maker, when it became due. Under the circumstances of this case, when did the note become due within the meaning and understanding of the parties ? Not necessarily when it was delivered ; for that would defeat the whole object of the parties in procuring the loan.

It seems to me the very language of the note itself furnishes the answer. It was due when payment was *demanded.* The whole contract of the promiser is, that he will pay the sum specified in the note, with interest, *on demand.*

It is said, the defendant's contract is, that the note shall remain good, for a *reasonable* time. There is certainly nothing of that kind expressed, either in the note or indorsement. The maker clearly made no such contract ; and I cannot see how it can be inferred from the indorsement.

But what is a reasonable time for a person to wait for payment of money loaned under such circumstances? Is it a week, a month, or a year ? What is there to guide a jury to a correct result, in such case ? Or what facts are there, which will enable a court to determine it, as matter of law ?

Such a construction, it seems to me, is calculated to add great uncertainty to indorsements already sufficiently uncertain, by the admission of parol testimony to show their meaning. And if it does not render them utterly worthless, will make them such as no prudent man will wish to take.

The contract set out in the first count in the declaration, is, that the defendant, by his indorsement, promised that the maker should pay the money specified in the note, according to the tenor of the note. The jury were instructed, that the law upon the facts in the case, would imply such a contract, if no other was proved.

This instruction was given after much consideration ; and a careful examination of the authorities since, has not led me to doubt its correctness. It seems to me, it must mean that, and nothing else. This construction would, in my view, be in perfect harmony with the decisions in our own courts, and such as would enable parties and juries to understand definitely the meaning of the contract. There would be no uncertainty as to the duration of the defendant's liability.

If it be said, that the defendant ought not to be bound for an unreasonable period of time, the answer is obvious. He became the surety of the maker of the note, and as such, can

put an end to his liability, in the same manner as any other surety.    But so long as all parties are content to let the contract remain, I do not see how the defendant can complain. If he wishes to be relieved from his responsibility, let him take the necessary measures for that purpose.    But I cannot see how that can be effected, by the mere silence of all the parties, as it might be, by the construction given by a majority of the court.

New trial not to be granted.