Russ *et ux.* v. The Steamboat War Eagle.

1. Verdict against evidence. The Supreme Court will not interfere with the exercise of the discretion vested in the District Court by overruling a motion for a new trial on the ground that the verdict is against the evidence, unless it appears that it was clearly against the weight of evidence. (Following *Jourdan* v. *Reed*, 1 Iowa, 135; *Freeman* v. *Rich*, Id., 504; *Schumaker et ux.* v. *Gelpcke*, 11 Id., 84, and the cases there cited.)

2. Contract: instructions. When the question as to whether a contract with a steamboat to carry passengers was for the round trip, or only to the destination of the boat, was material to the issue in a trial between the parties to an action; and the court instructed the jury that if they believed from the testimony that if plaintiffs' agent was authorized to engage passage for the round trip, "and did so, and that in pursuance of such agreement the plaintiffs went on board defendant and started on the passage, it is immaterial at what time the fare was paid, provided it was paid when demanded by the officer; and it is also immaterial whether a part of the fare was paid on the up trip, and a part on the down, or all at one time;" and also further instructed the jury, that the suit rested upon the allegations of a contract between the parties for conveying the plaintiffs the round trip, "that the jury must find such a contract between persons authorized to enter into the same;" "that it must be reciprocal, and bind plaintiffs to pay the fare whether they went or not;" it was *held*, that as it did not appear by the custom of the boat or otherwise, that prepayment of fare was necessary to bind the boat to carry passengers for the round trip, the instructions correctly stated the law governing the liability of the parties, and were properly given.

3. DUPLICATE INSTRUCTIONS. The District Court is not required, at the request of a party, to give an instruction which has already been given in the instructions in chief. (Following *Raver* v. *Webster et al.*, 3 Iowa, 502; *Moffit* v. *Cressler*, 8 Id., 122.)

4. INSTRUCTIONS: FACTS. Instructions which assume as true a state of facts material in the case should be refused by the court.

5. CASE APPROVED. *Sales* v. *The Western Stage Company*, 4 Iowa, 547, as to the skill and prudence required of common carriers, approved and followed. (*Frink & Co.* v. *Coe*, 4 G. Greene, 555; *West* v. *The Steamboat Berlin*, 3 Iowa, 532.)

6. ASSESSMENT OF DAMAGES. In assessing the damages sustained by a passenger from an injury caused by the negligence of a common carrier, the jury may consider the damage sustained up to the day of trial, by reason of physical disability and pain suffered, and if it be permanent in its character, the future disability arising from the injury. [...] 371-72.

7. CONCURRING VERDICTS. The fact that two verdicts returned in a cause concur, will have much weight in determining whether the last one is excessive.

8. EXCESSIVE VERDICT. A verdict for damages for a personal injury sustained by reason of the negligence of a common carrier, will not be disturbed by the Appellate Court on the ground that it is excessive, unless it is manifest and clear that it is excessive.

9. WITNESS: COMPETENCY OF THE WIFE. The wife may, under § 3986 of the Revision of 1860, be a competent witness for the husband, when he waives the prohibition contained in §§ 3980, 3983, 3985.

10. SAME: WHEN THE WIFE IS A PARTY. The fact that the wife is a party with her husband does not render her competent as a witness in any case in which she would not be competent if he was sued alone.

*Appeal from Dubuque District Court.*

' MONDAY, DECEMBER 22.

PLAINTIFFS sue ·defendant, as a common carrier of passengers and freight, for damages by the breaking of the arm of the wife while a passenger on a trip from Dubuque to St. Paul and back in September, 1857. Trial and verdict for $3,000. Motion for new trial overruled, and defendant appeals.

Russ v. The Steamboat War Eagle.

*Wilson, Utley & Doud,* and *Bissell & Shiras* for the appellants.

1. The carrier's risk terminates with the trip. Conceding that the contract was for the round trip, the defendant is not liable for an injury while lying at St. Paul. Story Bail., §§ 558, 590; 1 Bouv. Inst., 415; Jones on Bail., 23; *Garside* v. *Trent and Mersey Navigation Company,* 4 T. R., 581; *Platt* v. *Hibbard,* 7 Cow., 497; *Ackley* v. *Kellogg,* 8 Id., 223; 2 Kent, 794, note b; *Pennsylvania Railroad Company* v. *Zelee et ux.,* 34 Penn. S. R., 318.

2. Mrs. Russ, in sitting in the recess with her arm out of the window, was guilty of a want of ordinary care and prudence that contributed directly to the injury; and she cannot recover for any injury of which her own negligence was in whole or in part even the proximate cause. Red. Railways, 329; *Aurora Branch Railroad Company* v. *Grimes,* 13 Ill., 585; *Laing* v. *Colder,* 8 Penn. S. R., 479; *Galena Railroad Company* v. *Garwood,* 15 Ill.; *Galena and Chicago Union Railroad Company* v. *Fay,* 16 Id., 558.

3. The court instructed the jury that if, when performing their contract, they hurt a passenger without fault of his, the law raises *prima facie* a presumption of negligence, and throws upon the company the *onus* of showing that it did not exist. Under the circumstances of this case that was erroneous. *Holbrook et ux.* v. *Utica and Schenectady R. R. Co.,* 2 Kern., 236; *Curtis* v. *Roch. and Syracuse Railroad Company,* 18 N. Y., 534.

4. The admission of Mrs. Russ on the trial, as a witness, was clearly erroneous.

5. A steamboat is not liable for a gratuitous bailment. *Chouteau & Valle* v. *The Steamboat St. Anthony,* 20 Mo., 519.

*Henry S. Jennings* for the appellee.

1. Common carriers are bound to use the utmost skill and prudence in conveying their passengers, and are respon-

sible for the slightest negligence or want of skill either in themselves or their servants. Story Bail., § 592, *et seq.*; *Sales* v. *The Western Stage Company*, 4 Iowa, 547; *Bremner* v. *Williams*, 1 Car. & P., 144; *Crafts* v. *Waterhouse*, 3 Bing., 314; *Jones* v. *Joyce*, 1 Stark., 493; *Christie* v. *Griggs*, 2 Camp., 80; *Camden and Amboy Railroad Company* v. *Burke*, 13 Wend., 611; Ang. & A. Carr., §§ 534–540; *Peck* v. *Neil*, 3 McLean, 22; *Stokes* v. *Saltonstall*, 13 Pet., 181; *Hall* v. *The Connecticut Steamboat Company*, 13 Conn., 319; *Ware* v. *Gay*, 11 Pick., 1; Wallace, Jr., R., 2.

2. There is no privity between the plaintiff and the steamboat Milwaukee, and the right of action is against the steamboat War Eagle. *Hegeman* v. *The Western Railroad*, 3 Stev., 9; *Stokes* v. *Saltonstall*, 13 Pet., 181; *Thomas* v. *Winchester*, 2 Seld., 403; *Sullivan* v. *The Philadelphia and Reading Railroad Company*, 30 Penn. S. R., 234; *Railroad* v. *Canis*, 7 Harris, 299.

3. When it was proved that the injury was done by the breaking or falling of machinery, the presumption of negligence arose against the carrier, and he was charged with the *onus* of showing that the accident was of such a character that it could not have been guarded against. *Curtis* v. *The Rochester and Syracuse Railroad Company*, 4 Smith (18 N. Y.), 534; *The Philadelphia and Reading Railroad Company* v. *Derby*, 14 How., 468.

4. The verdict is not excessive. *Holbrook and wife* v. *The Utica and Schenectady Railroad Company*, 16 Barb., 113; 2 Stev., 236; *Linsley* v. *Bushnell*, 16 Conn., 235; *The Steamer New World* v. *King*, 16 How., 472.

WRIGHT, J.— Without discussing in their order the numerous errors assigned, we shall examine the points made by counsel so far as may be necessary to present our views of the same.

I. On the trial a material starting point was to ascertain and determine the true character of the contract under which plaintiffs took passage upon the boat. They claimed that defendant undertook to carry them from Dubuque to St. Paul and back, as an entire trip, they having the privilege to remain on the boat as such passengers while the boat was at St. Paul. The injury sustained by the wife occurred some two or three hours after the boat landed at St. Paul, and while she was in port. Defendant claims that there was no contract for the round trip, but that plaintiffs took passage for St. Paul, and paid for that alone; that at the time of the injury the boat had fulfilled her contract, and that plaintiffs were then on the boat as invited guests and not as passengers. If the latter was the character of the undertaking it is conceded that the Court below ruled correctly in holding that defendant would not be liable except for the gross negligence of her officers and crew. If the former, it is claimed that the boat was held to the utmost diligence and care, and would be liable for slight negligence.

As to the contract, several witnesses testified for the defendant as well as plaintiffs, and the Court instructed the jury as follows: "If the jury believe from the testimony of Piper that he was authorized to engage the passage of plaintiffs to St. Paul and back, and did so; and that in pursuance of such agreement the plaintiffs went on board the defendant and started on the passage, it is immaterial at what time the fare was paid, provided it was paid when demanded by the officers, and it is also immaterial whether part of the fare was paid on the up trip and part on the down, or all at one time." Second. This suit rests upon the allegations in the petition of a contract between the parties for carrying the plaintiffs from Dubuque to St. Paul and back. That the jury must find such a contract between persons authorized to enter into the same. That such a

contract to be binding must be reciprocal and so made as to be binding upon Russ to pay the fare, whether he went or not, and that unless such a contract was entered into, "they must find for the defendant."

Under these instructions, it is claimed by the defendant that the verdict was contrary to the evidence, for that the testimony did not show such contract. In this view, however, we cannot concur. There was certainly testimony from which the jury could fairly and justly conclude that such a contract was made. It is not for us to say whether the evidence upon this point preponderates in favor of the finding; for the verdict must be upheld, according to well settled rules, unless we are satisfied that the discretion vested in the District Court has been abused. And to justify this conclusion, it is well settled that it must appear that the verdict was clearly against the weight of evidence, *Jourdan* v. *Reed*, 1 Iowa, 135; *Freeman* v. *Rich*, Id., 504; *Schumaker et ux.*, v. *Gelpcke*, 11 Id., 84, and the cases there cited. Two considerations may be briefly suggested as applied to this point. It was the duty of the jury to ascertain the contract from all the testimony and all the circumstances of the case. The words " round trip," or " contract," may not have been used, nor were they necessary. The question is, what did the parties intend. Did plaintiffs have good reason to believe from the conduct and language of the officers of the boat, that they had a contract for the round trip, and did they hence believe that such a contract had been made. If so, and they acted upon it, the contract was complete. And that this was the understanding, we think the jury might very justly conclude. Then, again, the most that can be claimed is that the testimony is conflicting. And yet, it is not more so than many cases coming under our observation. Indeed, in a case so warmly contested as this, involving so much where witnesses testify years after the occurrence, conflict

or disagreement may almost be said to be the rule, and entire agreement the exception.   To reconcile the different versions of the transaction as detailed by the witnesses, and arrive at the truth in the premises, was the duty of the jury, and we are not at liberty to interfere with their finding, unless a much stronger case is made than is presented in this record.

Then, as to the instructions above quoted, we do not see how, taking them both together, they could reasonably have been more favorable to defendant.   They clearly state the law governing the point most controverted, and the jury could not mistake their duty.   If they found the contract as claimed by plaintiffs, then the first instruction was their guide.   If as claimed by defendant, then, according to the second instruction, they had no further inquiry to make.   It does not appear that, by the custom of the boat or otherwise, the prepayment of the fare was necessary to obligate defendant to carry passengers the round trip, and, therefore, if it was paid when demanded, the contract in its essence was complied with.   Nor would the liability of the boat be changed by the fact that because of the accident to the wife, no fare was exacted for her return to Dubuque.

But it is said that these instructions are in conflict with others.   Thus it is claimed that while the Court charged as above quoted, " that it is immaterial at what time the fare was paid " the jury were afterwards told to look " to the time and manner of payment, and to draw their conclusions whether the fare being paid at two separate and distinct times, and in two separate amounts, were not proof of two separate and distinct contracts."   In these instructions, however, there is no necessary, nor, to our minds, even apparent conflict.   The first recognizes the rule that the time of payment is immaterial so far as it affects the legal liability of defendant.   The latter only refers to certain circumstances bearing more or less remotely, as matter

of evidence, upon the contract as it was claimed by the respective parties.

Again, while the charge of the Court as found on page 103 of the record (following *Sullivan* v. *P. & R. Company*, Am. Law Reg., April, 1858) is not questioned, yet it is claimed that the fifth and sixth instructions asked by the defendant were the same in principle, and that their refusal was calculated to mislead and confuse the jury. If this was true, it would be no cause for reversing the case, for the Court was not bound to give an instruction which had already been covered by the instructions in chief. *Raver* v. *Webster et al.*, 3 Iowa, 502 ; *Moffitt* v. *Cressler*, 8 Id., 122. But the instructions were not the same in substance, and those asked, as applied to the case, were properly refused. They assume that there was no contract for the round trip, and that when the boat arrived at St. Paul, and a reasonable time had elapsed for the passengers to leave, the protection of the defendant ceased. If the proposition had been stated hypothetically there might have been some propriety in asking it. But when it assumed as true, the very position claimed by defendant, and based thereon the relative duties and liabilities of the parties, its refusal was clearly not error.

II. In the second place we are to consider so much of the instructions as present the duties of common carriers, for what negligence they are liable, and the duty of passengers before the carrier can be made liable. These instructions are very full and do no more than to enunciate what we understand to be well established, by all the text writers and best considered cases, as the law governing such liability. To quote these instructions at length and show their entire agreement with the law as thus settled, would serve no needful purpose at this time. The rules governing and many of the authorities applicable will be found in *Sales* v *The Western Stage Company*, 4 Iowa, 547.

We do not understand that any of the instructions given in this case, exact a greater degree of care, prudence or foresight, than is required in that; and to the law as there stated, there is no just exception. And see *Frink & Co.* v. *Coe*, 4 G. Greene, 555; *West* v. *The Steamboat Berlin*, 3 Iowa, 532.

III. It is claimed that the verdict was excessive. Upon the subject of damages the Court instructed the jury: "If you believe the injury was merely slight and temporary your verdict will be small. If it be permanent, the verdict should compensate for the injury sustained. In considering the extent of the injury, you are not to consider only the loss which plaintiff may have sustained up to this time, in consequence of being unable to use her arm as before, and to perform her accustomed duty, but also whether she has sustained such an injury as will in the future prevent her from the use of the arm as before, and from performing her ordinary duties as previously. The pain which the plaintiff may have suffered because of the injury, is to be taken into the account in considering the damages." To the rule as thus stated, no exceptions are taken, but it is insisted that the injury was not permanent, and that future damages can only be allowed where it is rendered reasonably certain that such damages will inevitably and necessarily result from the original injury. (*Curtis* v. *The Rochester and Syracuse Railroad Company*, 18 N. Y., 534.) If the injury in this case is permanent, there is no question but that the damages for the future are traceable directly and necessarily to such injury. There is nothing else to which they can by any fair possibility be traced. That it was such as to disable plaintiff for some time, perhaps months or years, the jury could fairly conclude from the testimony. And that they did so find scarcely admits of controversy. Was the verdict so excessive then as to justify our interference?

Russ v. The Steamboat War Eagle.

The cause was first tried in 1858, and a verdict for plaintiff in the sum of twenty-six hundred dollars. This judgment was reversed by this Court upon the ground that the charge of the Court was not confined to the law. 9 Iowa, 274. When the cause was remanded defendant changed the venue and upon a second trial plaintiffs recovered three thousand dollars, to reverse which this appeal is prosecuted. These concurring verdicts should alone lead us to hesitate before concluding that the last one was excessive. Then again, such questions are peculiarly within the province of the jury to determine. And some Courts have doubted, at least, whether in a case of this character, the appellate court should ever interfere with the amount awarded by the jury. So many elements properly enter into the computation, so much necessarily is left to a wise and well-guarded discretion, the difficulty of weighing nicely and determining with mathematical exactness the amount which should be paid for bodily suffering, mental anxiety and the like, that the excess should be so flagrant as to strike the mind at once as being the result of bias or prejudice, before the finding should be set aside. In *Lumley* v. *Bushnell*, 16 Conn., 235, it is said that: " In actions of this character there is no rule of damages fixed by law as in cases of contract, trover, &c. The object is the satisfaction and remuneration for a personal injury, which is not capable of an exact cash valuation. The circumstances of aggravation or mitigation, the bodily pain, the mental anguish, the injury to the plaintiff's business, past or prospective, all these and many other circumstances may be taken into consideration by the jury." And see *Holbrook and wife* v. *The Utica and Schenectady Railroad Company*, 2 Kern., 236 ; *Steamer New World* v. *King*, 16 How., 472. The verdict is not so clearly excessive under the circumstances as to entitle defendant to a new trial.

IV. But it is claimed that the charge of the Court was not confined to the law. It seems from all the testimony that Mrs. Russ was sitting in the stern of the boat, with her arm resting on and projecting out of the window. While thus seated a derrick and yawl fell, and one of the guys struck upon her arm thus projecting. In the introductory part of the charge, the Court in speaking of the undisputed facts, stated there was no controversy but that the injury "occurred while Mrs. Russ was sitting in the recess behind the ladies' cabin with her arm *on* the window sill." It is objected that this was an error in fact, for the reason that the arm was not *on* the sill, but extending beyond it. The point made is not appreciable, for though the arm may have projected, it did, nevertheless, rest on the sill of the window. In this matter all the witnesses agree, and there is no room for the least controversy. The Court but stated what neither party could, under the testimony, possibly deny.

V. The only remaining point demanding our attention is, whether the wife was a competent witness, when called by the plaintiffs. She was offered and objected to on the ground that she was incompetent to testify for or on behalf of her husband. In this connection the Court refused to instruct, that the "action was not brought for the benefit of the husband, and he being entitled to his wife's services, there can be no recovery for loss of time growing out of the accident." Her testimony was material in the determination of the cause.

The Revision of 1860, after providing that no person shall be disqualified from giving testimony by reason of his interest, whether such interest be as a party or otherwise; and that parties to any issue, "except as hereinafter excepted," shall be competent and compellable to give evidence on behalf of himself or any of the other parties, declares that "the husband or wife shall in no case be a

witness for or against the other, except in a criminal proceeding for a crime committed by one against the other, or in a civil action or proceeding one against the other, but they may in all criminal proceedings be witness for each other." §§ 3980, 3983. The succeeding sections (§§ 3984, 3985) prohibit the husband or wife from revealing communications made by the one to the other; and attorneys, physicians and ministers of the gospel, from disclosing any matter intrusted to them in their professional capacity. And then by § 3986 we have this language: "The prohibitions in the preceding sections do not apply to cases where the party in whose favor the respective provisions are enacted, waives the rights thereby conferred."

The Code of 1851, contained the common law rule which disqualified witnesses on the ground of interest, and provided that the husband or wife should not be witnesses against the other. The Revision removes all objection to testimony upon the ground of interest, but recognizing the reason of the exclusion as applied to certain existing relations, makes parties and witnesses thus situated incompetent.

The Kentucky Code of Practice, 1859, is substantially like ours. That of Ohio, 1860, upon this subject embodies the same principle. That of New York (1860) contains the provision that neither shall be required to disclose any communication made by the one to the other. Under these several provisions, as well as the New York Code of 1852, it has been held in those States that the ground of exclusion is not one of interest, but because it leads or may lead to the interruption of domestic harmony or confidence. *Erwin* v. *Smaller*, 2 Sandf., 340; *Pillow* v. *Bushnell*, 4 How. Pr., 9; *Hasbrouck* v. *Vandervoort*, 5 Seld., 153. In this last case it is said, that the principle which excludes the testimony of husband and wife when the other is a party or interested in the suit, depends merely upon the relations

existing between the witnesses and the parties, and not at all upon an interest in the event of the action And see Kentucky Code, 252; Ohio Code, 289. Following these decisions as well as what we understand to be the reason and policy of the statute, we are of the opinion that the fact that the wife is a party to the action with the husband does not make her competent in any case where she would not be competent if he sued alone. If the action was in her own name, or related alone to her separate property; so that in no just sense she could be regarded as testifying for or against the husband, but rather for or against herself, the rule would be different. But whenever the incompetency exists, if he is the sole party, it continues, though she is joined with him. In view therefore of the actual attitude of this case, and the view of the law taken by the Court in refusing the instruction asked, we incline to the opinion that the testimony was improperly admitted, unless the husband, by offering the same waived the prohibition and rendered her competent.

It will be observed that neither of the Codes referred to contain, so to speak, the enabling section above quoted from our Revision (§ 3986). What then does this section mean? Is it that " the rights thereby conferred" extend to the other parties to the action, or to the husband and wife alone. In other words, if the husband offers his wife, can his adversary insist on the prohibition contained in § 3983? Or, is it the husband alone who is to be consulted; whether she is to be offered for or against him? Our conclusion is, that if the other party to the relation (the husband or wife) waives the right, he or she is competent, whether offered for, or against the other, and that the prohibition cannot avail the adverse suitor. The argument is this: The prohibition is not founded on interest, but the interruption which the allowance of such a practice might produce in the domestic harmony of the parties, on grounds of policy

appertaining to the domestic relation. Such considerations are addressed to the husband or wife and not to their adversary. The privilege is a personal one, and, therefore, if the husband is ready to waive the right, and the wife does not object, it is not for the other party to stand guardian over the domestic quiet and welfare. See *Motts* v. *Usher & Thayer*, 2 Iowa, 82. It only remains to say that the case of *Karney* v. *Paisley*, 13 Iowa, 89, decides nothing, bearing upon this question.

The judgment must stand affirmed.

*Grant & Smith*, for the defendant and appellant, filed a petition for a rehearing, assigning the following grounds:

1. Because the War Eagle is not liable in any event. The action should have been against the boat which did the mischief. The War Eagle was in port, her fires down as she lawfully might be; the other boat is the aggressor, causes the mischief and is not sued.

2. This court ought to have reversed the judgment below, because Mrs. Russ, by sitting with her arm on the window sill and projecting out of it, was guilty of negligence herself, and as that negligence contributed to the injury she cannot recover. *Wilds* v. *The Hudson River Railroad Company*, Amer. Law Register, 1862, December, No. 76.

3. This is a proceeding in error for a wrong committed in the navigable waters of the United States, and this Court, in such cases, has no jurisdiction to render a decree in error in admiralty. The whole proceedings are under the Code, which authorizes an admiralty remedy. It is a suit *in rem*, and not *in personam*. *Smiths* v. *Dubuque County*, 1 Iowa, 492; *Little* v. *Fitts*, 33 Ala., 343; *Rose* v. *Himily*, 4 Cranch, 241; *Propeller Genesee Chief* v. *Fitzhuy*, 12 How., 449; *Waring* v. *Clarke*, 5 How., 441; *Fritz* v. *Ball*, 12 Id., 446, Judiciary Act 1789, § 9, Curtis Com., §§ 131, 124;

*Martin* v. *Hunter*, 1 Wheat., 304; *Fox* v. *Revenue Cutter*, 8 Law Reg., 459; *Eastbrook* v. *Goddard*, 1 Newb., 297.

This petition was duly considered by the Court and overruled.