ROBERTA J. ELINGS et al., appellees, v. TED McGREVEY, INC.,
**appellant.**

No. 48073.

(Reported in 53 N.W.2d 882)

JUNE 10, 1952.

Connolly, O'Malley & McNutt, of Des Moines, for appellant.

Theodore F. Mantz and Ralph N. Lynch, both of Des Moines, for appellees.

BLISS, J.—About 8:30 a.m. on November 29, 1950, Roberta J. Elings was driving the Ford sedan of her husband, plaintiff Calvin W. Elings, eastward on Madison Street in Des Moines, Iowa, and when the front of the car had just passed the center of the intersection with west Fifty-fifth Street the car she was driving was struck on the left side by a taxicab driven by an employee of the defendant. The twenty-foot roadway of each street was graveled. After being struck plaintiffs' car upset just east of the intersection and just south of the gravel roadway, It lay on its right side. The right front door came open and Mrs. Elings was so thrown that her legs, with the right one crossed over the top of the left one, protruded through the right front doorway and were caught between the top of the door and the top of the car, which was the upper part of the doorframe. This top part of the car pressed upon the right side of her right leg about three and one-half inches above the kneecap, so that she could not disengage herself. The taxicab stood upright near by. Neither its driver nor its passengers was injured in any way. The driver and a resident living close by at once raised the top of the Ford and Mrs. Elings disengaged herself. The neighbor who assisted in lifting the car testified that: "I observed her leg and saw a kind of bruise. It was puffed up there right on her right thigh." She told defendant's driver at this time that she did not believe she was hurt much, just a bruise. She was then in the sixth month of pregnancy. She was taken to the hospital from the scene of the collision, for examination,

and later that day was returned to her home. It was apparently determined that she needed no hospitalization.

Dr. Hughes, who was attending her during pregnancy, was not called, and did not see her until December 4, 1950. He was a witness for plaintiffs. Their petition was filed April 9, 1951, and the trial began September 24, 1951. Asked as to her nervous condition at the time he saw her on December 4, 1950, the doctor answered that she was somewhat agitated and complained of pain in her right thigh. Asked whether he examined the leg at the depression above the right knee, he answered: "Cursorily, not being my specialty, not in detail." He referred her to Dr. Thornton, a specialist in orthopedic surgery. Dr. Hughes cared for Mrs. Elings until the birth of her child on March 1, 1951. Asked if the birth was normal, he replied "entirely." He testified that a blow or trauma which would cause a depression such as Mrs. Elings had in her right thigh "could be" an active producing cause of both mental and physical pain. The doctor made no charge in connection with this injury.

Dr. Thornton, a witness for plaintiffs, testified, in substance, that: at the request of Dr. Hughes, he examined Mrs. Elings in the spring of 1951, because she had complained of a dip or depression just above her right knee on the outer side of the leg, which she had received in an auto accident.; she said this dent made her nervous, and her leg tired and bothered her at night and she would have trouble going to sleep; he found the depression about three and one-half inches above the right patella on the side of the leg, about an inch deep, in which he could lay his finger, with a hump on each side which tapered off; there was no scar there, but there was a depression in the soft tissue; she also complained that she had some swelling in the leg that had never completely gone down, which he found to be about one quarter of an inch in the thigh, calf and ankle; there appeared to be no impairment in the strength of the leg, and she had normal range of motion in the knee, hip and ankle; "that was essentially the findings of the examination; X rays were taken and they were negative as to any fracture of any of the bones in this right thigh"; she stated that her back "frequently ached" since the accident, and that she also had somewhat "frequent headaches"; "an examination of her back at that time did not

reveal any positive objective findings of anything wrong." Asked his opinion as to whether a car injury, such as she had received might have been an active producing cause of the dent or depression, Dr. Thornton answered:

"My opinion is it probably was the result of something striking her forcibly across the leg, or resting for some period of time across that spot, causing what we call a fat necrosis or absorption of fatty tissue under the skin between that and the muscle, which causes that fat to waste away, to be absorbed, and then to leave a depression where that fat normally was."

Dr. Thornton testified that the automobile accident causing the injury to plaintiff's leg very likely would cause mental and physical pain and would probably make her more nervous because she probably worried as to what might happen to the pregnancy.

He made a charge of $10 for the examination, which he said was the reasonable and ordinary charge. The fact that his charge was but $10 is an indication that he made but the one examination in the spring of 1951, the exact date of which does not appear.

Mrs. Elings testified that she consulted two other doctors to ascertain if there was not some treatment she could be doing herself that would bring her leg back to normalcy, and to full strength. One of these was Dr. Wirtz, an orthopedist, who charged her $3, and the other was Dr. Keene, whose charge was $5. Neither one was a witness, and any information which she may have received from either does not appear.

She also testified in substance that: prior to this accident she had no injury to her right leg and no depression; she was dazed after the collision, but did not lose consciousness; after she returned from the hospital that day her leg was well bruised and she could not stay on it to get her work done, and thereafter for a month or six weeks her mother, mother-in-law and her husband helped in her housework and the care of her four-year-old daughter, and thereafter they helped her with her laundry, ironing and any other hard work, although she had done all her work prior to the accident; during the time she was being helped her right leg would tire and she would have to lie

down; "the anxiety that went through my head from the time of the accident until the birth of this child, and wondering whether we had done anything to that child, what its condition might be when it was born, was just almost more than I wanted to bear"; she took sedatives off and on after the accident for her nerves and for relaxation until the baby was born; her back bothered her a little more than usual and she had some headaches; she would wake up in the night once in a while crying and dreaming she was in another car collision; she had pain in her back once in a while, and the pain in her leg continued in some degree for a month or more after the accident, and later on it would come back at irregular times; she still had a very tired feeling in that leg during the day, much more than in the other one.

Her husband corroborated her respecting the help in the home, her difficulty in sleeping sometimes and crying in the night, and of his rubbing his wife's back and applying hot pads to her leg, occasionally.

The allegations for damages suffered by Mrs. Elings are set out in paragraph 6 of the petition, as follows:

"As a result of defendant's negligence, plaintiff Roberta J. Elings, who was then in a delicate condition of health due to the expectant birth of a child, was badly bruised and injured when defendant's taxicab struck the middle of her husband's car and rolled it over; her right limb, between the hip and knee was badly blackened and bruised and the muscles and nerves of said limb were permanently injured; her injuries required hospitalization, physicians' services and medication, and caused her to lose time from her work as a housewife and mother of her children; the shock to her nerves and from her injuries caused her to suffer severe mental and physical pain and suffering, from which she has not recovered. On account of the foregoing, she has been injured to the extent of Five Thousand Dollars ($5000)."

The prayer was for judgment for Mrs. Elings for $5000 with interests and costs.

The second count of the petition alleged damage to the car of Mr. Elings in the amount of $400. Defendant conceded that

if recovery was had on this issue the amount claimed was reasonable.

The court instructed that any amount allowed for medical expense should not exceed $18; any amount allowed Mrs. Elings for physical pain and mental anguish was "left to the sound discretion and good judgment of the jury", as would be fairly compensatory. A similar instruction was given with respect to any sum she was entitled to recover for disability as a wife, mother and homemaker. The total recovery, if any, was not to exceed $5000.

No instruction was given permitting recovery in any amount for future pain, physical or mental, or for future disability.

Defendant's motions for directed verdict were overruled. Defendant filed motion for judgment notwithstanding verdict, and motion for new trial. The latter motion was based upon the grounds: (1) that the damages were excessive and appeared to have been influenced by passion or prejudice; (2) that the verdict and its amount are not sustained by sufficient evidence and are contrary to law; and (3) that the court erred in failing to sustain motions for directed verdict. Later, and before submission, this motion was amended by alleging that although the issues of future pain and suffering, or permanent injury, were not submitted to the jury, investigation disclosed that the jury did consider these matters in determining the amount of the verdict. No affidavits or other proof in support of the amendment are found in the printed record. In the amendment, defendant prayed that the award to plaintiff Roberta J. Elings be cut to a sum not to exceed $1000, or that a new trial be granted.

I. Defendant assigns and presents on appeal but two errors, to wit, (1) the court erred in failing to set aside the verdict and to grant a new trial on the ground that the verdict was based upon passion or prejudice, and not solely upon the evidence, and (2) the court erred in failing to reduce the amount of the verdict of the jury. We will discuss both assignments together. Defendant does not contend that Mrs. Elings is not entitled to a substantial recovery. It virtually concedes this in its amendment to motion for a new trial by praying that the verdict be reduced to a sum not to exceed $1000, or that a new trial be granted. There can be no rigid rule or standard by which to fix the amount of recovery on the chief items of dam-

ages submitted to the jury, in this case, or in cases of this kind, in general. The determination of the amount is ordinarily within the sound discretion of the jury. Of course, this discretion is not without limit or control. But ordinarily courts will not disturb such verdicts unless they are so flagrantly excessive or small, or so out of reason as to shock the conscience or sense of justice, or raise a presumption that they are the result of passion or prejudice or other ulterior influence. This court has many times so announced from its earliest to its latest decisions. In Russ v. The Steamboat War Eagle, 14 Iowa 363, 371, 372, plaintiff's wife while a passenger on the boat on a trip from Dubuque to St. Paul in 1857 was sitting with her arm projecting over the window sill, when it was struck and broken by a falling yawl. A judgment of $3000 was recovered. Speaking through Justice Wright the court said:

"Was the verdict so excessive then as to justify our interference ? * * * such questions are peculiarly within the province of the jury to determine. * * * So many elements properly enter into the computation, so much necessarily is left to a wise and well-guarded discretion, the difficulty of weighing nicely and determining with mathematical exactness the amount which should be paid for bodily suffering, mental anxiety and the like, that the excess should be so flagrant as to strike the mind at once as being the result of bias or prejudice, before the finding should be set aside."

The dollar at that time had not sunk to the depreciated depth of recent years.

The courts of this state have never departed from this rule. Collins v. City of Council Bluffs, 32 Iowa 324, 331, 332, 7 Am. Rep. 200 (modified on rehearing 35 Iowa 432–445) ; Rose v. The Des Moines Valley R. Co., 39 Iowa 246, 255–257; Belair v. The Chicago & N. W. R. Co., 43 Iowa 662, 676, 677; Kroener v. Chicago, M. & St. P. Ry. Co., 88 Iowa 16, 24–26, 55 N.W. 28; Wimber v. Iowa Central Ry. Co., 114 Iowa 551, 557, 558, 87 N.W. 505; Jordan v. Cedar Rapids & Marion City Ry. Co., 124 Iowa 177, 182, 183, 99 N.W. 693; Canfield v. Chicago, R. I. & P. Ry. Co., 142 Iowa 658, 672–676, 121 N.W. 186; Ellis v. Republic Oil Co., 133 Iowa 11, 21, 110 N.W. 20; Lehman v. Minneapolis & St. L. R. Co., 153 Iowa 118, 125, 126, 133 N.W. 327;

Raines v. Wilson, 213 Iowa 1251, 1262, 1263, 239 N.W. 36; Ryan v. Trenkle, 199 Iowa 636, 639, 640, 200 N.W. 318; Remer v. Takin Bros. Freight Lines, Inc., 230 Iowa 290, 294, 297 N.W. 297; Lenth v. Schug, 226 Iowa 1, 11, 12, 281 N.W. 510, 287 N.W. 596; In re Estate of Hollis, 235 Iowa 753, 760, 16 N.W.2d 599; Dedman v. McKinley, 238 Iowa 886, 892, 29 N.W.2d 337; Dunham v. Des Moines Ry. Co., 240 Iowa 421, 430, 431, 35 N.W.2d 578; In re Estate of Murray, 238 Iowa 112, 114, 115, 26 N.W.2d 58; DeToskey v. Ruan Transport Corp., 241 Iowa 45, 48, 49, 40 N.W.2d 4, 17 A. L. R.2d 826; Primus v. Bellevue Apartments, 241 Iowa 1055, 1065, 1066, 44 N.W.2d 347; Thornbury v. Maley, 242 Iowa 70, 79, 80, 45 N.W.2d 576, 581, 582; Glatstein v. Grund, 243 Iowa 541, 557, 558, 51 N.W.2d 162, 172, 173.

▮ II.  The fact that a verdict may shock the conscience is not the sole test for reducing or setting aside a verdict or granting a new trial. A trial court may independently exercise these powers when it is convinced that a verdict does not effect justice or that a jury has not done its duty. Dewey v. Chicago & N. W. R. Co., 31 Iowa 373, 377, 378; In re Estate of Hollis, supra, 235 Iowa 753, 760 et seq.; In re Estate of Murray, supra, 238 Iowa 112, 115. But there is no basis for the application of this rule in the case before us.

▮ The jury was not niggardly with Mrs. Elings. The verdict was amply compensatory. The fact that we as jurors might have found that a lesser amount would have been fairly compensatory is beside the point. It was the province of the jury in its sound discretion to determine the amount of the verdict, and we find no grounds in the facts or in the law to disturb that determination. There is no evidence that the amount of the verdict was the result of passion, prejudice or other improper factor.

▮ III.  A proper factor to consider in the determination of whether a verdict is too large is that values of all commodities have been materially inflated and the purchasing power of the dollar has been materially depreciated in recent years. This fact has been commented on in several of the decisions noted above.

The judgment is—Affirmed.

The CHIEF JUSTICE and all ASSOCIATE JUSTICES concur except JUSTICE MANTZ, who takes no part.