DeWAYNE DELMAR TURNER, by BETTY TURNER, his mother and next friend, appellee, v. HARRY HANSEN, appellant.

No. 48887.

(Reported in 75 N.W.2d 341)

March 6, 1956.

R. Lee Black and Connolly, O'Malley & McNutt, all of Des Moines, for appellant.

Theodore Duffield and James A. Lorentzen, both of Des Moines, for appellee.

PETERSON, J.—Plaintiff is a boy two and one-half years old. This is an action by his next friend and mother, Betty Turner, against the landlord of the family. Plaintiff alleges that by reason of a defectively fastened guardrail on the side of a stairway leading to the basement he fell a distance of nine feet to a cement floor, and suffered bruises and a permanent injury in the form of a scar over his eye. The jury rendered verdict for plaintiff in the amount of $2000. Defendant appeals.

Betty Turner was a tenant of defendant at No. 703 Seventh Street, Des Moines, Iowa. She had lived in an apartment in said property for four months before the accident. On July 6, 1954, Mrs. Turner was in the basement of the apartment house taking care of the family washing. She had her three children with her and when she went up to the yard to hang out clothes, DeWayne, the plaintiff, did not come back down into the basement with her. She went out to find him and found him lying on his stomach at the bottom of the stairway. He was crying. She testified that a 2x4, which had been a guardrail at the top of the stairway, was lying on the steps behind him. He was taken to the hospital and his injuries consisted of some scratches and bruises and what she called a "big hole" in his head between the hairline and his eyebrow. He was bleeding profusely. He recovered rapidly as to all bruises, except the head injury left a very noticeable scar.

The testimony shows that the 2x4 which Mrs. Turner states she found at the bottom of the stairway had been used as a temporary guardrail at the top of the stairway. A plumber testified that a permanent tube was to be placed as a guardrail, but he had not been able to make the repair as yet, and in the meantime this 2x4 had been wired to the uprights about twenty-two inches above the base which surrounded the top of the stairway.

There was serious conflict in the evidence as to whether or not the 2x4 had fallen to the floor of the stairway. The decision as to the facts was for the jury. The jury decided in favor of plaintiff.

Defendant filed an amendment to his motion for new trial, alleging misconduct by the jury, and in support of the amendment placed one of the jurors on the witness stand. This juror testified that while the jury was deliberating one of the jurors brought into the jury room a piece of No. 9 wire about a foot long. This was discussed and an attempt was made to twist it around the 2x4. The 2x4 had been placed in evidence by defendant.

In this appeal defendant raises three questions:

First: that the bringing of the piece of wire into the jury room by a juror, and the discussion concerning same, was prejudicial misconduct.

Second: that the verdict was excessive and the result of passion and prejudice.

Third: that plaintiff failed as a matter of law to prove that plaintiff's injury was the proximate result of defendant's negligence.

I. It was irregular for the juryman to bring the wire into the jury room. The juror who brought in the wire was not placed on the witness stand. Another juror testified concerning the matter. There is a definite thread of pronouncement running through the cases where misconduct of jury is charged, as to whether the actions or statements were prejudicial to the party against whom the case was decided. Fagen Elevator v. Pfiester, 244 Iowa 633, 56 N.W.2d 577; Conway v. Alexander, 200 Iowa 705, 205 N.W. 351; Keller v. Dodds, 224 Iowa 935, 277 N.W. 467; annotation 93 A.L.R. 1451.

39 Am. Jur., New Trial, section 70, page 85, states as follows: "However, it is well established that not every instance of misconduct in a juror will require a new trial. The general principle underlying the cases is that the misconduct must be such as to affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment. A new trial

will not be granted for misconduct of the jury if no substantial harm was done thereby to the party seeking a new trial, even though the misconduct is such as to merit rebuke from the trial court if brought to its notice. The rule seems to be that however improper such conduct may have been, if it does not appear that it was occasioned by the prevailing party or by anyone in his behalf, and there is nothing to indicate any improper bias upon the juror's mind, and the court cannot see that it either had, or might have had, an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside. Trivial acts of misconduct on the part of a juror during the course of a trial does not require that the verdict be set aside. The misconduct must be such as to reasonably indicate that a fair and impartial trial was not had, or to render it reasonably doubtful whether the verdict was legitimately procured."

In Keller v. Dodds, supra, a juror had informed the other jurors that it was compulsory under Iowa law for a trucker to carry liability insurance. The court held that this was not prejudicial misconduct because it is common knowledge the statute requires all truck operators to carry such insurance, and every juror is presumed to know the law.

This decision was referred to in Fagen Elevator v. Pfiester, supra. In this case the juror had brought into the jury room a copy of Iowa Drivers' Guide and this was urged as misconduct. The court stated at page 642 of 244 Iowa, page 582 of 56 N.W.2d: "We think our decision in Keller v. Dodds, supra, is applicable here. The jurors are presumed to have known any provisions of law which were read from The Iowa Drivers' Guide and discussed by them. Such reading and discussion, although of course not to be commended, seems less likely to have influenced the verdict than what was said and discussed in Keller v. Dodds."

Keller v. Dodds, supra, is cited with approval in the following cases: Hoffman v. Jones, 229 Iowa 333, 334, 294 N.W. 588; State v. Billberg, 229 Iowa 1208, 1222, 296 N.W. 396, 404; Remer v. Takin Bros. Freight Lines, 230 Iowa 290, 296, 297 N.W. 297, 299. See also 66 C. J. S., New Trial, section 58b(3), page 180.

In considering the facts in this case, we conclude that

the matter of the wire being present in the jury room was not prejudicial to defendant. The fact question before the jury was whether or not the temporary 2 x 4 guardrail had fallen down with the child to the bottom of the stairway. The jury by its verdict held it had. Under these conditions, the type of wire with which the guardrail was fastened, and whether or not the wire in the jury room could be bent around the 2 x 4, were immaterial. There was no conflict in the evidence on the question of the guardrail being a 2 x 4 fastened to the uprights with wire. The trial court analyzed the situation clearly in his ruling on the motion for new trial, when he stated:

"Whether the wire in the jury room could be bent could not have meant that the wire on the guardrail was not bent, as all the evidence in the case is that it was so bent in that the guardrail was wired to the uprights. Moreover, whether the board before the jury was actually the one in place as a guardrail, would not be so important, as there was no question as to any weakness inherent in the board itself. It was rather a question as to how the 2 x 4 was wired to the uprights."

It is well established that the trial court has wide discretion in connection with a case of this type, and his decision is entitled to substantial weight and consideration. In re Estate of Murray, 238 Iowa 112, 119, 26 N.W.2d 58, 63.

The Murray case is in reverse as to parties, but the rule is the same. Unless the discretion of the court is abused his decision as to misconduct of the jury should not be reversed. In the Murray case this court stated: "However, we are not prepared to hold it was a clear abuse of discretion for the trial court to conclude the statements constituted prejudicial misconduct on the part of the juror who made them."

II. Defendant urges that the verdict was excessive and the result of passion and prejudice. It is true that the hospital and doctor bills were not large. It is also true that with the exception of the scar the little child recovered quickly. However, it is undisputed that it is a very noticeable and permanent scar on the little boy's forehead immediately above his eye reaching

from the eye to the hairline. The scar is in a prominent place, and at least through his youth will cause embarrassment. The jury fixed the amount, and this must have some weight, and should not be disturbed unless unduly excessive. On the motion for new trial the trial court gave the matter careful consideration and in his ruling quoted from Waterloo Savings Bank v. Waterloo, Cedar Falls & Northern Railroad, 244 Iowa 1364, 1376, 60 N.W.2d 572, 579. This is a very careful analysis of the question under consideration and of cases of this type and we quote as follows:

"Both parties cite numerous cases in which we have held the damages were, or were not, excessive. They are of some value for comparison, but this value is limited. The matter of the amount of damages is peculiarly for the jury, and its verdict should not be interfered with unless its wide discretion has clearly been abused. In considering the amount allowed in this case we must keep in mind the depreciation of the United States dollar in the comparatively recent past. It will now buy little, if any, more than fifty per cent of what it would have purchased ten to fifteen years ago. This makes comparison with any but the most recent cases valueless. We take judicial notice of this cheapening of the currency, and we consider the amount allowed by the jury in the light of the lessening buying power of the dollar. Dunham v. Des Moines Railway Co., 240 Iowa 421, 35 N.W.2d 578; Dedman v. McKinley, 238 Iowa 886, 892, 29 N.W.2d 337. We are unable to say there is a sufficient showing here the award made by the jury was unconscionable or so clearly excessive we should interfere."

The court also quoted from Elings v. Ted McGrevey, Inc., 243 Iowa 815, 820, 53 N.W.2d 882, 885, as follows:

"There can be no rigid rule or standard by which to fix the amount of recovery on the chief items of damages submitted to the jury, in this case, or in cases of this kind, in general. The determination of the amount is ordinarily within the sound discretion of the jury. Of course, this discretion is not without limit or control. But ordinarily courts will not disturb such

verdicts unless they are so flagrantly excessive or small, or so out of reason as to shock the conscience or sense of justice, or raise a presumption that they are the result of passion or prejudice or other ulterior influence. This court has many times so announced from its earliest to its latest decisions. In Russ v. The Steamboat War Eagle, 14 Iowa 363, 371, 372, plaintiff's wife while a passenger on the boat on a trip from Dubuque to St. Paul in 1857 was sitting with her arm projecting over the window sill, when it was struck and broken by a falling yawl. A judgment of $3000 was recovered. Speaking through Justice Wright the court said:

" 'Was the verdict so excessive then as to justify our interference? * * * such questions are peculiarly within the province of the jury to determine. * * * So many elements properly enter into the computation, so much necessarily is left to a wise and well-guarded discretion, the difficulty of weighing nicely and determining with mathematical exactness the amount which should be paid for bodily suffering, mental anxiety and the like, that the excess should be so flagrant as to strike the mind at once as being the result of bias or prejudice, before the finding should be set aside.'

"The dollar at that time had not sunk to the depreciated depth of recent years."

In both of these cases the question of the depreciated value of the dollar was given consideration. We should take the permanent injury of plaintiff and the question of depreciated value of the dollar in these modern days into consideration in this case. The verdict was not in such amount that the decision of the jury can be called the result of passion and prejudice. The discretion which the trial court has as to amount of recovery was not abused in overruling the motion for new trial.

III. The third question urged by defendant is that plaintiff did not sustain the burden of proving that the negligence of defendant was the proximate cause of the accident.

There was conflict in the evidence on this point. Two witnesses testified that the 2 x 4 which had been the temporary railing at the top of the stairway was at the bottom of the stairway near the place where plaintiff was found. The defendant and

two of his employees testified that the 2 x 4 was never out of place prior to putting in the permanent tubing guardrail. This was a question for the jury and they found in favor of plaintiff.

The evidence with reference to the 2 x 4 coming loose and falling to the bottom of the stairway with plaintiff is circumstantial.. Plaintiff was too young to testify. There is testimony that he was found at the bottom of the stairway with the 2 x 4 near him, and with the injuries as alleged. The question of negligence and whether or not it was the proximate cause of plaintiff's injuries under the circumstances as shown was a question for the jury.

We have repeatedly held that circumstantial evidence is admissible and can form the basis or in some cases a part of the basis for submission of the case to the jury.

In the case of Shinofield v. Curtis, 245 Iowa 1352, 1357, 66 N.W.2d 465, 468, this court stated as follows with reference to circumstantial evidence: "Her case rests largely on circumstantial evidence. We are committed to the rule that in such a case the evidence must be such as to make plaintiff's theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. It is not necessary that the testimony be so clear as to exclude every other possible theory [citing cases]."

In 26 A. L. R. 2d 507, we find this general statement, which is somewhat analogous to the present case: "Although the only testimony as to the defective and decayed condition of an outside stair railing which collapsed, injuring the plaintiff, a tenant in the defendant's apartment house, was that of the plaintiff himself, which was met by the contradictory testimony of the defendant, a verdict for the plaintiff was sustained in Garshon v. Aaron (1947) 330 Ill. App. 540, 71 N.E.2d 799, the court saying that the plaintiff's testimony was supported by undisputed physical facts, and that it was the province of the jury to determine the weight of the evidence and the credibility of the witnesses."

In the case of Hayes v. Stunkard, 233 Iowa 582, 586, 10 N.W.2d 19, 21, a substantial part of the evidence was based upon the circumstances of the situation. Concerning this question the court stated: "The facts may be established by circumstantial

678

evidence as well as, and sometimes better than, by the direct testimony of witnesses."

The trial court instructed on the question of circumstantial evidence under Instruction No. 6 and it was a question for the jury to decide as to whether or not the circumstances were such that plaintiff's injury was the proximate result of defendant's negligence.

We therefore affirm.—Affirmed.

All JUSTICES concur.