BEULAH H. NICHOLS, appellee, v. DOROTHY A. SNYDER et al. appellants.

No. 49022.

(Reported in 78 N.W.2d 836)

OCTOBER 16, 1956.

Brown, Dresser & Kinsey, of Mason City, for appellants.

Boyd G. Hayes, of Charles City, for appellee.

LARSON, J.—The facts in this case are simple and without serious dispute. The accident occurred on the north side of the intersection of Main Street, which is a north-south street, and Riverside Drive, which is an east-west street, in Charles City, Iowa, about 6 p. m. on June 1, 1955. It was a clear day and the pavements were dry. The plaintiff, Beulah Nichols, age 25 and married, accompanied by her daughter, age 3, waited on the northwest corner of the intersection for the traffic light to turn green so that she could cross Main Street from west to east. At the same time defendant Dorothy A. Snyder, driving an automobile belonging to her father, defendant Leonard B. Snyder, headed east on Riverside Drive, waited on the west side of the intersection for the lights to change. Another car headed west on Riverside Drive waited on the east side of the intersection. When the stop and go lights changed to green, plaintiff with her child in her left arm proceeded eastward across Main Street to a point a little past the center of the street where she was struck by the automobile driven by Dorothy

A. Snyder. In making her left turn north on Main Street, Miss Snyder failed to see plaintiff until she was struck. The impact knocked plaintiff to the pavement and, although the wheels did not run over her, she was dragged some 18 feet and pinned beneath the front of the car by a wheel resting on her dress. When released, she crawled out and, though dazed, sought her child who had run to the side of the street. Plaintiff received many cuts and bruises, was in a semiconscious condition, and her clothing was ruined, but with the exception of two broken teeth she had no fractures. She was kept in the hospital overnight for observation and treatment, and a three- or four-inch gash in her scalp was sutured. After returning home she suffered severe headaches, which her doctor said resulted from a slight concussion. They have become less frequent and severe and are expected to last no more than a year. She complained of a painful coccyx bone, commonly called tail bone, and was unable to iron, lift, or ride long distances in a car. This condition also is expected to gradually disappear, although it may take a year or more. The scalp wound has healed and the scar is covered by her hair. The black-and-blue areas covering her lower extremities have disappeared. She may lose two teeth, as one nerve had to be removed and the other may die, which would necessitate a partial plate. A wound on her right ankle developed a keloid or tumor that forms in a scar, which should be removed surgically and treated by X ray to avoid the formation of another keloid. There were other cuts and scratches which appear to have healed properly. The jury awarded her $5000 for pain and suffering plus the sum of $366.23 for clothing, hospital, doctor and dental bills, duly admitted into the record.

Defendants raise but two issues in this appeal. They complain that the trial court erred in submitting to the jury specifications of negligence in regard to defendant's duty to sound a warning horn, and by giving an improper instruction thereon; that the jury verdict of $5000 for pain and suffering and mental anguish, past and future, is excessive; and that the trial court erred in overruling defendants' motion for a new trial on said grounds.

I. It is defendants' contention that there is no duty

imposed upon the driver of a vehicle to sound a warning horn when the pedestrian was not seen by him, and that when the evidence disclosed such a circumstance it was error to submit such an issue to the jury. This is a novel argument indeed, for in order to avoid this obligation a driver need only to close his eyes or look away and his duty to warn is absolved. Such is not the law in Iowa. Appellants rely greatly upon the Wisconsin case of Blazic v. Franzwa, 179 Wis. 260, 191 N.W. 572, for the proposition that a motorist who looks but fails to see a pedestrian is not reasonably required to sound a warning horn. A careful examination of that case discloses circumstances which might well place it among the cases of a sudden darting out into the path of the motorist. It was a dark, rainy night which somewhat obscured the driver's vision of the child moving swiftly into the crosswalk. The court found it was not reasonably apparent that a warning need be given. An able dissent discloses the fear that the case would be cited as authority for defendant's proposition, and we find no other cases which support that position. Due to the factual circumstances disclosed, the court also found therein no evidence of failure to keep a proper lookout, a position defendants do not assert in the case before us. Furthermore, the Wisconsin Supreme Court pointed out "there is no statute requiring" the sounding of a horn when reasonably necessary, as we have here in Iowa. Section 321.329, Code of Iowa 1954, provides as follows:

"Notwithstanding the provisions of section 321.328 every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn *when necessary* * * *." (Emphasis supplied.)

And section 321.432 provides:

"* * * The driver of a motor vehicle shall when *reasonably necessary to insure safe operation* give audible warning with his horn * * * when upon a highway." (Emphasis supplied.)

In Delfs v. Dunshee, 143 Iowa 381, 386, 122 N.W. 236, 239, Judge Ladd laid down the rule in Iowa by stating: "Whether such signal is essential in the exercise of ordinary care must be determined from the circumstances of each case." Also see Pixler

v. Clemens, 195 Iowa 529, 191 N.W. 375; Lawson v. Fordyce, 234 Iowa 632, 12 N.W.2d 301.

■ Even in the absence of a statutory provision, there is a duty to sound a warning under certain conditions and circumstances. In 60 C. J. S., Motor Vehicles, section 288, pages 674, 675, it is stated: "In the absence of statutory or other governmental regulation imposing a mandatory duty to do so, the duty to blow a horn or give other warning signal of the approach of a motor vehicle depends largely on the circumstances * * *. It is the duty of the driver to give warning of the approach of the vehicle when this is *reasonably necessary* to avoid danger or injury to others by according them an opportunity to take measures for their own protection * * *." (Emphasis supplied.)

It is further pointed out that this rule applies particularly to the situation "where there are persons in proximity to the path of the vehicle and unaware of its approach", and is especially true where the motorist changes direction and thus runs down a pedestrian.

On page 677 of 60 C. J. S. we also find: "Failure to see the person injured in time to sound a warning signal has been held not to relieve the driver of the consequences of negligence in failing to give a signal as required by statute." The only exception, of course, is where the circumstances disclose a motorist could not reasonably see the pedestrian in time to sound a horn. Such a situation we had before us in Crutchley v. Bruce, 214 Iowa 731, 240 N.W. 238. However, as previously pointed out, this is not the case where a child comes into the path of the vehicle suddenly and unexpectedly. Such cases cited by defendants have no application here. Lawson v. Fordyce, supra.

■ At pages 667 and 668 of 60 C. J. S., section 284, we find this statement: "It is his [the motorist's] duty, unless some reasonable excuse or explanation for not seeing is shown, to see what is in plain view or obviously apparent, or the things which a person in the exercise of due care and caution would see under like or similar circumstances, and to be cognizant of them and utilize the information obtained to prevent injury to himself and others."

Such, we think, are the occasions when under our statute the sounding of a horn or warning is "reasonably necessary."

A good statement of the law appears in Nunnelley's Admr. v. Muth, 195 Ky. 352, 356, 242 S.W. 622, 624, 27 A. L. R. 910, 912, where the court said: "Nor was the duty of signaling the approach of the truck obviated by reason of the fact that the driver did not see Clifton Nunnelley until the latter was practically on the point of the fender. There is evidence to show that *he could have seen* the boy at a distance of fifty-five feet from the point of the accident. It was for the jury to say whether he could have seen the boy at that distance, and, if they believed from the evidence that he could, whether in the exercise of ordinary care he could have given a signal and averted the accident." (Emphasis supplied.)

No reasonable explanation or legal excuse appears as to why the defendant operator failed to see plaintiff or give her a warning. The instructions given the jury upon the submission of this specification of negligence were proper, for the jury might well determine from the evidence that plaintiff was seen or should have been seen, and that the circumstances disclosed a duty to warn her was established as reasonably necessary under sections 321.329 and 321.432, supra.

The instruction complained of stated:

"As stated in Instruction No. 1, the plaintiff has alleged that the defendant, Dorothy A. Snyder, was negligent in failing to give a warning.

"In this particular you are instructed that every driver of a motor vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary.

"There is a duty on the part of an operator of a motor vehicle to sound a warning to avoid colliding with a pedestrian whenever a careful and prudent person in the exercise of reasonable and ordinary care under the circumstances and conditions then existing, would give such warning.

"If you find from the greater weight or preponderance of the evidence that a duty to give a warning, as above explained, existed at the time on the part of the defendant, Dorothy A.

Snyder, and said defendant failed to give such warning, such failure would constitute negligence on the part of the defendant, Dorothy A. Snyder."

██ We think the instructions correctly state the law and that the duty to warn is reasonably necessary when the facts disclose a clearly visible pedestrian who had the right of way and who was unaware of the approaching motorist and of her danger. Arenson v. Butterworth, 243 Iowa 880, 54 N.W.2d 557.

Defendant admitted she did not sound her horn and did not see the plaintiff who was proceeding across the street in the crosswalk which was five or six feet wide and was marked with painted lines. The record discloses that plaintiff was seen by others, was in plain sight of defendant, and although there was evidence that just before the collision she had stooped over to pick up a dropped package, it did not appear she would have been out of defendant's view at that time. Plaintiff on the other hand had glanced to her right just before making the crossing and did not see defendant's car approaching and was unaware of its presence.

In three rather recent cases we have had occasion to examine the duty imposed upon the driver of a motor vehicle to sound a warning to pedestrians when necessary under the sections of the Code above referred to. In Lawlor v. Gaylord, 233 Iowa 834, at 836, 10 N.W.2d 531, 532, involving a similar accident, we said:

"There was substantial direct evidence that appellee failed to sound the horn to give appellant warning of the approach of his automobile and that appellant was unaware of its presence. From the evidence in this case the jury could have concluded appellee was under a duty to warn appellant; that appellee failed to perform that duty and that such failure was the proximate cause of the accident. [Citing cases.]"

We think there was substantial evidence here from which the jury might well determine that by the exercise of due care defendant would have been aware of a situation whereby it was reasonably necessary to sound her horn to insure the safe operation of her automobile and to avoid striking down this pedestrian, rightfully in the crosswalk.

In Lawson v. Fordyce, supra, 234 Iowa 632, 12 N.W.2d 301, we held a duty to sound a warning horn was disclosed. In discussing that duty we quoted with approval from Handlon v. Henshaw, 206 Iowa 771, 773, 221 N.W. 489, 490, as follows:

"It cannot be held, as a matter of law in every case, that an auto driver is absolved from giving a signal on approaching a pedestrian on a highway on the theory that the pedestrian saw the vehicle immediately prior to the collision."

Certainly then, it cannot be held as a matter of law in every case that an automobile driver is absolved of the duty to give a warning signal on approaching a pedestrian on the highway in plain sight on the testimony of the motorist that the pedestrian was not seen by the driver immediately prior to the collision.

If the circumstances disclosed may be found to require that a warning be given as "reasonably necessary" to insure the safe operation of the vehicle, then the duty to do so cannot be avoided by the operator's denial of knowledge of the obvious actual situation. The duty is not solely dependent upon the driver's knowledge of existing danger, but is also based upon the knowledge and observation he should have had as a reasonably prudent individual under the existing circumstances. The warning statutes mean nothing less. Thus if the statute may require a warning, such a determination is for the jury under proper instructions. While this duty is similar to the duty to keep a proper lookout, it is not identical, and by failure to act with due care one may breach both duties.

In Rebmann v. Heesch, 227 Iowa 566, 579, 288 N.W. 695, 701, we said in this regard: "The duty of keeping a proper lookout includes not only using reasonable and ordinary care to discover the person in danger, but also reasonable care in the operation of the vehicle to avoid injuring him."

We conclude therefore that it was proper to submit the question to the jury as to whether defendant in the exercise of ordinary care could have seen the plaintiff in time to give a warning, or that it was reasonably necessary, and whether or not her failure to do so was the proximate cause of the injury to plaintiff.

II. We find no merit in defendants' contention that the

verdict of $5000 for pain and suffering, past and future, was so excessive as to show that it was influenced by passion or prejudice, or was not sustained by sufficient evidence. Ample evidence was introduced to show plaintiff suffered head, back, teeth, and leg injuries, some of a permanent nature; that she suffered and continues to suffer pain and some incapacities from those injuries, and that certain other dental and surgical work is necessary. We are not prepared to say that such an award is not just and proper, for clearly her injuries were substantial.

We have often said there can be no rigid rule or standard by which to fix the amount of recovery for pain and suffering in cases of this nature. The determination of the amount is ordinarily within the sound discretion of the jury. Ordinarily also this discretion will not be disturbed unless it is so flagrantly excessive or small, or so out of reason as to shock the conscience or sense of justice, or raise a presumption that it is the result of passion or prejudice or other ulterior influence. Elings v. Ted McGrevey, Inc., 243 Iowa 815, 53 N.W.2d 882, and cases cited therein.

So many elements properly enter into a proper computation of the sum one should receive as compensation for his bodily suffering, mental anxiety and loss of energy that it is difficult to determine with mathematical exactness the amount which should be paid the injured party. The constant changing economic picture adds to the difficulty when permanent injuries are involved, for we have recognized the diminished value of the dollar. Turner v. Hansen, 247 Iowa 669, 75 N.W.2d 341; Waterloo Savings Bank v. Waterloo, Cedar Falls & Northern Railroad, 244 Iowa 1364, 60 N.W.2d 572.

Apparently nothing occurred in the trial to convince the trial court and there is nothing shown in the record which would justify us in the conclusion that plaintiff's award was not justified by the evidence, or was arrived at as a result of passion or prejudice. Plaintiff faces two more rather unpleasant operations, one on her ankle and another on her teeth, the outcome of which will at best not be a complete restoration of her former condition. She suffered backaches and headaches for almost a year and has only a promise that time will relieve her of this

misery. She carries permanent scars on her ankle and head, which though not exposed, at present still may cause her some mental anxiety. We are not prepared to say the award of $5000 is excessive, and certainly not so excessive that the court should interfere with the jury's determination of this amount.

For other recent discussions of this matter, see Crum v. Walker, 241 Iowa 1173, 44 N.W.2d 701; Agans v. General Mills, Inc., 242 Iowa 978, 48 N.W.2d 242; Gatewood v. Cooper, 245 Iowa 1281, 66 N.W.2d 472; Ferguson-Diehl Constr. Co. v. Langloss, 239 Iowa 346, 30 N.W.2d 320; Jettre v. Healy, 245 Iowa 294, 60 N.W.2d 541; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275.

Furthermore, we have often expressed reluctance to hold that a trial court abused its discretion in refusing to grant a new trial on these grounds. In our most recent pronouncement in Turner v. Hansen, supra, 247 Iowa 669, 674, 75 N.W.2d 341, 343, we affirmed a $2000 verdict for personal injuries to a 2½-year-old boy who fell down a stair well, recovered quickly, and whose doctor and hospital bills were not large, stating:

"It is well established that the trial court has wide discretion in connection with a case of this type, and his decision is entitled to substantial weight and consideration."

As said also in the case of In re Estate of Hollis, 235 Iowa 753, 759, 16 N.W.2d 599, 602: "The question of whether the verdict was excessive was not one of law but was a question of fact under the record made, and the answer was one resting in the legal discretion of the court."

It must here be concluded that under the record made, the determination of the fact that plaintiff sustained damages of $5000 for pain and suffering is not so clearly in error that the lower court abused its discretion in refusing to grant a new trial, and we thus find no merit in this assigned error. The case must be affirmed.—Affirmed.

All JUSTICES concur.