ELDON TUCKER, appellee, v. TOLERTON & WARFIELD COMPANY, a
corporation, appellant.

No. 49274.

(Reported in 86 N.W.2d 822)

DECEMBER 17, 1957.

Deck & Mahr, of Sioux City, for appellant.

Gill & Dunkle, of Sioux City, for appellee.

GARFIELD, J.—This is a law action to recover for personal injury from a fall in a grocery store operated by defendant,

Tolerton & Warfield Company, in Sioux City. Owners of the store building were also joined as defendants but were held not liable by judgment on directed verdict. Since this ruling is not challenged we treat Tolerton & Warfield Company as sole defendant.

Plaintiff, age 26, was a route salesman of soft drinks for Sioux City Bottling Works. January 27, 1956, he drove his truck loaded with bottled beverages to the rear of defendant's store. A garbage truck was at the rear door. Plaintiff entered the store and went to the front part to check and rearrange the supply of pop and clean and dust the shelves on which it was displayed. After 15 to 20 minutes he returned to his truck by the same path he took in entering the store. The garbage truck was then gone. Plaintiff selected from his truck enough quart bottles of beverages to replenish the store's supply. Four cases of bottles were needed. These were loaded on a two-wheel iron cart with handles extending from the wheels about shoulder high. This took five to ten minutes. The cart and load weighed some 250 pounds.

Plaintiff then started toward the rear door, set his loaded cart down, opened the door, went back to his cart and pushed it down the ramp leading from the door to the floor of the building. When almost to the bottom of the ramp his feet went out from under him, he fell on his buttocks and the loaded cart fell on top of him. The ramp was of concrete, 6 feet, 9 inches wide, and 6 feet, 3 inches long, with a descent of 21 inches (26⅔%) from the threshold of the door to the floor.

There were three lettuce leaves each, as we understand the record, about as large as plaintiff's hand, and some paper on the ramp almost to the bottom of it. There was also a patch of ice or packed snow about six inches square on the ramp. Plaintiff fell when he stepped on one of the lettuce leaves.

The trial court submitted to the jury only one charge of negligence against defendant—in allowing the lettuce leaves to be or remain on the ramp.

■■ I. The contention most strongly urged is that plaintiff's contributory negligence appeared as a matter of law. In considering this claim of course the testimony must be viewed in the light most favorable to plaintiff. Mongar v. Barnard, 248 Iowa 899, 903, 82 N.W.2d 765, 768, and citation. When this is

done it is fairly clear the issue of plaintiff's freedom from contributory negligence was one of fact for the jury, not of law for the court.

Plaintiff had been in defendant's store only four or five times before the day he fell. It was not on his regular route which was in Nebraska. On one earlier occasion plaintiff had seen litter and trash in boxes and some of it on the ramp but the garbageman had not been there that day. At these previous times plaintiff descended the ramp safely with his load. When he entered the store on January 27 two garbagemen and two of defendant's employees were removing garbage from the rear of the store to the truck backed up to the rear door. One garbageman was in the truck. The other, standing on the ramp, was taking boxes of garbage from defendant's employees. When plaintiff finished checking the store's supply of pop and walked up the ramp the rear door was closed. As a witness he insists there was no light burning and it was dark there.

It is not surprising plaintiff did not see the lettuce near the bottom of the ramp when he first entered the store. It may not have been there then. A garbageman testifies each day 300 to 500 boxes were usually removed from the store, open drums of garbage were dumped into the truck and about 100 trips were made to it. There is evidence an employee of defendant was trimming lettuce near the ramp on the day in question. Nor is it strange plaintiff did not see the lettuce as he left the store to go to his truck if, as he insists, the door was closed and it was dark when he ascended the ramp. Plaintiff says he looked before starting down the ramp with his cart but could see nothing on it because his cart was in front of him and it was dark down inside. He was wearing rubbers.

From plaintiff's cross-examination by the store owners this appears: "The thing on my mind as I opened the door and started down the ramp was to go ahead and deliver my pop and be careful. * * * Yes, I was watching my step. I was looking where I was going. * * *

"Q. On the morning in question you had reason to believe you could proceed down it [ramp] without difficulty? A. Yes. * * *

"Q. You thought by being careful you could go down? A. Yes * * *."

Plaintiff's testimony also indicates he was unable to see well upon entering the dark building from outdoors. It was only when his eyes became accustomed to the darkness after his fall that he could see the lettuce, paper and ice or snow upon the ramp.

Defendant argues plaintiff was negligent in not seeing the lettuce or anticipating its presence and not looking more carefully before descending the ramp. It is said that if it was dark inside he should have "stood there a second or two so he could view the ramp." Of course this is proper argument for a jury but it does not persuade us plaintiff's contributory negligence appeared as a matter of law.

As defendant concedes the issue of freedom from contributory negligence is of course ordinarily one of fact for the jury. As defendant also admits the issue becomes one of law for the court only in the exceptional case where plaintiff's want of reasonable care is so manifest and flagrant as to convince all fair minds plaintiff did not exercise the caution for his own safety which marks the conduct of ordinarily prudent men. It is ordinary care, not the highest degree of care, that is required. See Toney v. Interstate Power Co., 180 Iowa 1362, 1378, 163 N.W. 394, 400; Leinen v. Boettger, 241 Iowa 910, 926, 44 N.W.2d 73, 82, and citations; Aitchison v. Reter, 245 Iowa 1005, 1009, 64 N.W.2d 923, 925; Miller v. Griffith, 246 Iowa 476, 479, 66 N.W.2d 505, 507; Mueller v. Roben, 248 Iowa 699, 702, 82 N.W.2d 98, 100, and citations.

"We have held many times that if there is any evidence tending to establish plaintiff's freedom from contributory negligence that issue is for the jury. [Citations.]" Weilbrenner v. Owens, 246 Iowa 580, 582, 68 N.W.2d 293, 294. Certainly there is substantial testimony here tending to show plaintiff acted with ordinary care.

On this issue plaintiff's case is fully as strong as McGrean v. Bos Freight Lines, 240 Iowa 318, 323, 36 N.W.2d 374, 377, where plaintiff was injured while delivering merchandise to a warehouse when an ice pick, which had been stuck in the wall about five feet above the floor to hold union notices, struck his

eye. On the day he was injured McGrean had passed the ice pick twenty-two times. After referring to this fact the opinion uses this language applicable here:

"But this, in face of his denial of having seen it, merely created a jury question. The court could not say as a matter of law that he must have seen the pick or, in the exercise of reasonable care, should have seen it. The light was dim. Plaintiff entered each time from the sunlight into the shadow, pushing a wheelbarrow along a narrow two-foot aisle or corridor. It was not for the court to say he must have seen the danger or was, as a reasonably prudent man, under any duty to have seen it. The fact that others had on other occasions and perhaps under different circumstances seen the ice pick was merely a consideration to be argued to the jury. It could not be held to convert the issue of contributory negligence into a law question."

■ On the issue of freedom from contributory negligence it is proper to consider the fact that plaintiff, as an invitee upon defendant's premises, had a right to assume, unless he knew or should have known otherwise, that reasonable precautions had been taken for his safety. He was not required to anticipate negligence on defendant's part. See Gardner v. Waterloo Cream Separator Co., 134 Iowa 6, 10, 11, 111 N.W. 316, 318; Nelson v. F. W. Woolworth & Co., 211 Iowa 592, 604, 605, 231 N.W. 665; Riggs v. Pan-American W. P. & P. Co., 225 Iowa 1051, 1057, 283 N.W. 250. See also Webber v. E. K. Larimer Hdwe. Co., 234 Iowa 1381, 1384, 1385, 15 N.W.2d 286, 288; Stupka v. Scheidel, 244 Iowa 442, 449, 450, 56 N.W.2d 874, 878.

The precedents just cited together with Hull v. Bishop-Stoddard Cafeteria, 238 Iowa 650, 685–9, 26 N.W.2d 429, 449–51, lend support to our holding in this division. See also language in Atherton v. Hoenig's Grocery, 249 Iowa 50, 55, 86 N.W.2d 252, 255.

■ II. There is no merit in defendant's complaint the question of plaintiff's permanent disability should not have been submitted to the jury since, it is said, it was too speculative.

There is clear evidence plaintiff's fall resulted in two ruptured spinal disks. On May 1 they were removed by surgery and a piece of bone was taken from plaintiff's pelvis and placed in the

area from which the disks were taken. The operation took three to four hours. This case was tried the following October. Plaintiff's Dr. Wm. M. Krigsten testifies he has an opinion as to the permanent disability plaintiff will suffer from his injury and operation and fixes it at twenty per cent of his whole body, perhaps a little higher. He had performed about 600 or 700 operations of this type. On questioning by defendant's counsel this witness says he does not like to estimate the extent of disability in less than a year following such an operation.

At defendant's request Dr. J. W. Graham examined plaintiff September 20 evidently for the purpose of testifying. He says plaintiff is totally disabled from doing the type of work he was performing when hurt, he has an opinion plaintiff would have about twenty per cent disability of his body after this injury and the required surgery. "That is my present opinion as to his present condition." Like Doctor Krigsten, Doctor Graham testifies it was then too early to give a final opinion as to the percentage of plaintiff's disability—"that would be another six months from now."

This assigned error is based on the medical testimony that a more accurate estimate of the extent of plaintiff's disability could be made six or seven months after the trial. Because of this defendant thinks the trial should have been delayed until such time, the doctors should not have been permitted to give opinions as to the percentage of disability and it was error to submit to the jury the question of permanent disability.

No authority has come to our attention that supports such a position. Followed to its logical conclusion it would mean trial of such actions must be postponed until the precise extent of injury may be determined with certainty. This might call for a delay of trial here of several years on the strength of Doctor Graham's testimony, "We know these [bone] grafts can get stronger and more permanent for three or four years."

Doctors Krigsten and Graham appear unusually well qualified to diagnose and treat injuries like plaintiff's. Each testifies he then had an opinion of the extent of plaintiff's permanent disability. They were properly allowed to express such opinion. It is significant they substantially agree upon the extent of disability. There is a good deal of testimony other than that of these

two doctors which tends to show the permanency of plaintiff's disability. It was not error to submit the question to the jury.

The precedents defendant cites are not in conflict with our conclusion. Smith v. Pine, 234 Iowa 256, 260, 261, 12 N.W.2d 236, 240, holds there may be no recovery for future pain and suffering unless reasonably certain to result from the injury. But certainly the exact extent of the future pain and suffering cannot and need not be shown. Sexton v. Lauman, 244 Iowa 570, 583, 57 N.W.2d 200, 207, 37 A. L. R.2d 353, so far as pertinent, says damages should be proved with all the certainty the case permits. We cannot say this was not done here in showing the extent of plaintiff's disability.

■ III. Error is assigned in not giving the jury defendant's requested instruction that in the matter of keeping its premises safe its duty was to warn plaintiff of any danger of which it had actual knowledge and plaintiff must prove this knowledge unless the danger had existed for such time that defendant in the exercise of ordinary. care should have known of it.

We find no objection in the trial court, as rule 196, Rules of Civil Procedure requires, to the failure to give this instruction. Nor was objection made to any instruction given except that on the measure of recovery on the ground discussed in Division II hereof. We might therefore, as rule 196 contemplates, decline to consider this claimed error. Pond v. Anderson, 241 Iowa 1038, 1046, 44 N.W.2d 372, 377, and citations; Stupka v. Scheidel, supra, 244 Iowa 442, 451, 56 N.W.2d 874, 879; Stewart v. Hilton, 247 Iowa 988, 995, 77 N.W.2d 637, 641, and citations.

We may observe, however, the requested instruction deals with a matter wholly outside the issues. As previously stated but a single charge of negligence against defendant was submitted to the jury—that it was negligent in allowing lettuce leaves to be or remain on the ramp. It was not alleged defendant was negligent in failing to warn plaintiff of danger and the instructions given place no duty to warn upon defendant.

Further, it may not be said failure to give the requested instruction was prejudicial to defendant. Had it been given the jury might have found defendant at fault in a respect not alleged by plaintiff. At best the request might have confused the jury. It could scarcely help but find there was no warning. At least

there is no contention or evidence a warning was given. Also if an instruction on duty to warn were called for it would seem it should have stated there is no duty to warn of danger that is obvious or of which plaintiff knew. Atherton v. Hoenig's Grocery, supra, 249 Iowa 50, 86 N.W.2d 252, and citations.

Upon either of the considerations just explained the requested instruction is more favorable to plaintiff than to defendant and less favorable to it than the instructions given. Hence there was no prejudice to defendant in its refusal. See in this connection Stutsman v. Des Moines C. R. Co., 180 Iowa 524, 536, 537, 163 N.W. 580; 5A C. J. S., Appeal and Error, section 1774(b); 3 Am. Jur., Appeal and Error, section 1128.

▇ IV. We find no merit in defendant's contention the evidence is insufficient to support a finding its negligence was the proximate cause of plaintiff's injury. The ten lines of argument on this proposition are based on the fact plaintiff injured the upper part of his back in 1953, together with testimony of defendant's witness Doctor Graham that the fall in 1956 aggravated a pre-existing condition and did not cause his injury. The ruptured disks were in the lower part of the spine—at the fourth and fifth lumbar vertebrae.

There is much evidence contrary to Doctor Graham's. Doctor Krigsten who treated plaintiff for both injuries and Dr. Carroll A. Brown who performed part of the operation on May 1 both express the opinion plaintiff's fall caused the ruptured disks and the 1953 injury had no connection with it. Plaintiff explains that the backache following the earlier injury was in the upper part of his back and the pains from his fall in 1956 were in the lower part. Also that the 1953 injury had not bothered him since long before he fell in defendant's store. X rays taken soon after the earlier injury revealed no fractures or dislocation of bones or joints.

The contention now considered rests on Doctor Graham's disagreement with part of the testimony of Doctors Krigsten and Brown and plaintiff himself. This merely created a jury question. There is ample support for its finding on the issue of proximate cause. Of course if Doctor Graham's testimony were accepted plaintiff might still be entitled to recover for increased suffering proximately caused by defendant's alleged negligence.

Waterloo Savings Bank v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1375, 60 N.W.2d 572, 578.

 V. Defendant's remaining complaint is that the verdict of $18,000 was governed by passion and sympathy and is excessive. While the verdict is large and perhaps more than we would have returned as jurors, we are not persuaded defendant's contention should be sustained.

Division II hereof indicates to some extent the nature of plaintiff's injury. He was hospitalized forty-two days. His leg was in traction eleven days. He underwent a long operation May 1. Medical and hospital expense was $1567. It would have been more if plaintiff's wife and mother had not acted as his nurses part of the time he was hospitalized. In more than eight months between his injury and the trial plaintiff was able to earn only $133 at some light work. When injured his guaranteed pay was $73.50 a week and in the summer he earned $80 to $100 a week. Thus loss of earnings down to the trial was at least $2500.

As stated in Division II defendant's witness Doctor Graham testifies (as does plaintiff's doctor in effect) plaintiff is totally disabled from doing the type of work he was performing when he fell and agrees with Doctor Krigsten he would have about twenty per cent disability of his body. Plaintiff says he is unable to do the work he did before his fall. Life expectancy of a person plaintiff's age is 41.24 years. There is much evidence of pain and suffering down to time of trial and substantial testimony it is reasonably certain to continue. When injured plaintiff weighed 153 pounds, at the trial 126. There is no indication in the record the verdict was the result of passion or prejudice.

 Defendant's claim the verdict is excessive was urged upon the trial court in the motion for new trial. His holding the contention was without merit is entitled at least to substantial weight. Indeed we have said we "rely greatly" upon the trial court's judgment in a matter of this kind. Jesse v. Wemer & Wemer Co., 248 Iowa 1002, 1019, 82 N.W.2d 82, 91. See also Nichols v. Snyder, 247 Iowa 1302, 1312, 78 N.W.2d 836, 842.

 We have frequently pointed out that the determination of the amount of damages in cases of this kind is ordinarily within the sound discretion of the jury. Of course this is not without limit or control. But ordinarily courts will not disturb

such verdicts unless they are so flagrantly excessive or inadequate or so out of reason as to shock the conscience or sense of justice or raise a presumption they are the result of passion, prejudice or other ulterior influence. Elings v. Ted McGrevey, Inc., 243 Iowa 815, 821, 53 N.W.2d 882, 885, 886, and citations; Turner v. Hansen, 247 Iowa 669, 675, 676, 75 N.W.2d 341, 344; Nichols v. Snyder, supra, 247 Iowa 1302, 1311, 78 N.W.2d 836, 841. See also Waterloo Savings Bank v. Waterloo, C. F. & N. R., supra, 244 Iowa 1364, 1376, 60 N.W.2d 572, 579; Weilbrenner v. Owens, supra, 246 Iowa 580, 589, 68 N.W.2d 293, 298; Frost v. Des Moines Still College, 248 Iowa 294, 308, 79 N.W.2d 306, 315.

 We have said comparison of verdicts in different cases is not a satisfactory method of deciding whether a particular award is excessive. Stiefel v. Wandro, 246 Iowa 807, 818, 68 N.W.2d 53, 59. Nevertheless such comparison of recent verdicts does have some limited value. Waterloo Savings Bank case, supra. Accordingly these late precedents may be cited as furnishing some support for the conclusion reached in this division: Agans v. General Mills, Inc., 242 Iowa 978, 985, 986, 48 N.W.2d 242, 246; Miller v. McCoy Truck Lines, 243 Iowa 483, 491, 492, 52 N.W.2d 62, 67; Weilbrenner v. Owens, supra, 246 Iowa 580, 589, 590, 68 N.W.2d 293, 298, 299; Stiefel v. Wandro, supra, last above.

We think the assigned errors do not entitle defendant to a reversal. Of course we consider no others.—Affirmed.

HAYS, C. J., and BLISS, OLIVER, WENNERSTRUM, THOMPSON, LARSON, and PETERSON, JJ., concur.